HYSKO *v.* POLONIA PUBLISHING CO.

1. Libel and Slander—Plea of Justification—Sufficiency.

In an action for libel, based on an article published in a newspaper, a notice attached to defendant's plea stating that said article was not printed and published with any malicious intent, but was a fair statement of the facts and circumstances which occurred at the time and place stated, was sufficient to apprise plaintiff that the defense of justification would be relied upon.

2. Same—Plea of Justification—Where Charge Specific Plea Need Only Allege Its Truth.

In an action for libel, ·where the alleged defamatory charge is specific, the plea of justification need only allege the truth of the charge and that it was published without malicious intent.

3. Same — No Damages Recoverable Unless Libel Contains Falsehoods.

In a civil action for libel, no damages are recoverable for a libel that contains no falsehoods.

[1]Libel and Slander, 37 C. J. § 375; 21 L. R. A. 502; 31 L. R. A. (N. S.) 132; 50 L. R. A. (N. S.) 1040; 17 R. C. L. 400; 3 R. C. L. Supp. 677; 4 R. C. L. Supp. 1128; 6 R. C. L. Supp. 1013; [2]Id., 37 C. J. § 376; [3]Id., 36 C. J. §§ 161, 193.

4. SAME—TRIAL—INSTRUCTIONS.

In an action for libel, based on an article published in a newspaper, which stated that plaintiff and others had been arrested as sharpers for attempting to extort money to which they were not entitled, an instruction by the trial court that the article was libelous *per se*, and that the burden was on defendant to establish that it was a true statement of facts, and that defendant was not actuated by malice in publishing it, *held*, as favorable to plaintiff as he was entitled to.

5. SAME—NEWSPAPERS MAY PUBLISH STATEMENT OF DAILY OCCURRENCES.

Newspapers have a right to publish a fair statement of the daily occurrences in the community without being guilty of libel; the words used are to be taken in the sense in which they would be understood by those who read them.

6. SAME—JUSTIFICATION—QUESTION FOR JURY.

In an action for libel, based on an article published in a newspaper, evidence *held*, sufficient to take to the jury the question as to whether the defense of justification had been established.

Error to Wayne; Marschner (Adolph F.), J.   Submitted April 12, 1927.   (Docket No. 75.)   Decided July 29, 1927.

Case by Hipolit Hysko against the Polonia Publishing Company for libel.   Judgment for defendant. Plaintiff brings error.   Affirmed.

*Charles C. Stewart* and *John W. L. Hicks*, for appellant.

*Arthur A. Koscinski* and *Robert J. Wojcinski*, for appellee.

SHARPE, C. J.   This action is for damages for libel.   On July 20, 1923, defendant published an article in a daily newspaper, called the Polish Daily

[4]Libel and Slander, 37 C. J. § 561; [5]Id., 36 C. J. §§ 21, 193, 262, 265; [6]Id., 37 C. J. § 552.

Record, on which the charge is based. The article was printed in the Polish language. The declaration contains a translation into English, the correctness of which is challenged by defendant. The heading, as translated by plaintiff's witnesses, reads as follows: "News From Hamtramck. Mayor of the city caught three old time robbers." The word translated "robbers" is by defendant's witnesses translated "sharpers."

The trial court instructed the jury that, no matter which translation was accepted, the article was libelous *per se*. He submitted to the jury defendant's claim that the article as published, when correctly translated, was a true statement of the facts detailed in it, and instructed them that, if they so found, and if defendant was not actuated by malice in its publication, plaintiff could not recover. The jury found for the defendant. Plaintiff reviews the judgment entered on the verdict by writ of error.

It is urged that the instruction that the article was libelous *per se* entitled the plaintiff to a directed verdict. It is claimed that the notice attached to the plea was not sufficient to entitle plaintiff to rely on justification. In it defendant averred—

"That said article was not printed and published with any malicious intent, but was a fair statement of the facts and circumstances, which occurred at the time and place stated."

We think this sufficiently apprised the plaintiff that such a defense would be relied upon. Where the defamatory charge is specific, the truth of the charge need only be alleged. 17 R. C. L. p. 400.

We must assume that the jury found the defendant's translation to be the correct one. Summarized, the article may be said to state: that Stanley Stymelski had been having trouble with his wife; that he consulted his "good and wise friend Stolarski," and that

the latter took him to a man (the plaintiff), "who was said to be both a detective and lawyer," to advise him; that plaintiff expressed his regret and promised to come to his home that evening "to set the things there right;" that plaintiff arrived there about 7 o'clock, accompanied by Stolarski and two other men; that they entered the house without permission and began to search it "as if they were detectives who were intending to look for whisky;" that Stymelski asked plaintiff who he was, and he displayed what apparently was a badge of a deputy sheriff; that plaintiff finally told Stymelski that they knew he had whisky, and that if he would give them $30 it would be all right; that Stymelski said he would pay the money, but would have to go out and get it; that plaintiff said they would be back in three hours and "have the money ready on time;" that Stymelski went after the money, and met Mayor Jezewski in a drug store and told him the whole story; that the mayor called a policeman and went with him to Stymelski's home, and when plaintiff came he was arrested and taken to the police station and afterwards turned over to the sheriff.    The article concluded with a statement of what the different parties had to say about what occurred:

"The Hamtramck policeman who arrested these three men declared that John Stolarski as well as Hipolit Hysko and Jos. Szymanski were under the influence of moonshine and that they wanted to get some money out of Stymelski.    *    *    *

"Hysko, the known real estate agent, told the police officers in jail that he was not pretending to be the deputy sheriff at all, that he had right to wear the badge as a special deputy sheriff, and he added that he went to the house of Stymelski with the purpose of getting for him a good lawyer, who was to take up his divorce case.    *    *    *

"Mr. Hysko as well as Szymanski and Stolarski threatened to file suit against the Hamtramck police for the alleged unjust and unfair arrest as well as for cruel treatment.    *    *    *

"All of them positively assert that they went to Stymelski's house with the only purpose of frightening a little his wife and of making her change her ways, and to play on her a few good tricks."

Stymelski testified that he was told that plaintiff was an officer and would help him in his trouble with his wife; that when plaintiff came to his house he told him that he would watch his wife and that "he would see that I would get a divorce in a hurry;" that they searched the house; that he asked one of the men what they were looking for, and he said "he was looking for liquor;" that plaintiff "told me to give him $50 to help me out, to look up my wife up and arrest her if he gets her and that will help me in my divorce;" that he told plaintiff he had no money, and he said "give me $10 now and $40 later;" that he went out to borrow the money, and saw the mayor in his drug store; that his house was locked when he left it, but when he came back the front door was open and one of his neighbors told him that the men had been arrested.

The officer who made the arrest testified that while acting as a patrolman he came to Stymelski's house and saw two men in front of it and plaintiff in the house; that plaintiff was staggering, and when he asked him what he was doing there he said "it is none of your business;" that plaintiff was then under the influence of liquor, and he arrested him and took him to the police station.

The reporter, Stanley Kopka, testified that when at the police station Lieutenant Berg "accused Mr. Hysko and his two companions that they were doing similar jobs not only in Detroit but on farms and he even asked about various special jobs that came to the knowledge of the chief of detectives."

"In a civil action for libel no damages are recoverable for a libel that contains no falsehoods." *Sullings* v. *Shakespeare*, 46 Mich. 408 (41 Am. Rep. 166).

As before stated, the trial court instructed the jury that the article published, no matter which translation was accepted, was libelous *per se,* and that the burden was on the defendant to establish by a preponderance of the evidence that "it was a true statement of facts," and that defendant was not actuated by any malice in publishing it.    This was certainly as favorable an instruction as plaintiff was entitled to.    The question of privilege was not submitted to them.

The gravamen of the charge is that plaintiff and others visited the home of Stymelski and attempted to extort money from him to which they were not entitled.    Newspapers have the right to publish a fair statement of the daily occurrences in the community. The words used are to be taken in the sense in which they would be understood by those who read them.    A careful reading of the article and of the proof offered by the defendant satisfies us that the plaintiff was not entitled to a directed verdict.    It was for the jury to say whether the defense of justification had been established.    The charge, we think, fairly submitted to the jury the issues presented by the proofs.    We find no reversible error.

The judgment is affirmed, with costs to appellee.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.