COCHRANE v. WITTBOLD.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—OBJECTIONS TO INSTRUCTIONS.

Objections to charge to jury in action for libel, made for first time on appeal, are not discussed, where they were not presented at trial below and are unnecessary to decision of the case on appeal.

2. SAME—JUDGMENT NON OBSTANTE VEREDICTO.

The Supreme Court does not set aside jury verdicts and remand for entry of judgment *non obstante veredicto* unless the factual record is so clear that reasonable minds may not disagree.

3. PRINCIPAL AND AGENT—AGENT'S SERVICE TO HIMSELF—DISCLOSURE.

An agent may not serve himself while purporting to serve and accepting a fee from his principal without the most complete disclosure to the principal.

4. LIBEL AND SLANDER—TRUE DEFAMATORY CHARGES.

Recovery in a libel action cannot be predicated upon defamatory charges which are proven to be true.

5. SAME—REAL ESTATE SALESMAN—TRUTH—MALICE.

Statements by real-estate broker, to corporation and securities commission, the agency which licensed real-estate brokers and salesmen, which were damaging to plaintiff saleswoman in that they accused her of making a deal with vendors of real estate without disclosing she was the real purchaser, receiving a fee from the vendors for the sale, and then selling the property at a profit, which statements were true, *held*, not a basis for recovery in libel action even though there were facts supporting a finding of malice on the part of defendants who made the statements.

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error §§ 379, 1158.
[2] 3 Am Jur, Appeal and Error § 887.
[3] 2 Am Jur, Agency § 253.
[4, 5] 33 Am Jur, Libel and Slander § 117.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted January 8, 1960. (Docket No. 44, Calendar No. 48,137.) Decided April 11,. 1960.

Case by Marilyn Cochrane against Robert L. Wittbold and Wittbold & Company, a Michigan corporation, for libel. Verdict and judgment for plaintiff. Motions for judgment *non obstante veredicto* and new trial denied. Defendant appeals. Reversed.

*Frederick D. Bartholomew (Meyer Weisenfeld,* of counsel), for plaintiff.

*Joslyn, Joslyn & Dean,* for defendants.

EDWARDS, J. This is a libel suit by a real estate saleswoman, Marilyn Cochrane, against her former employer, Wittbold & Company, and its president, Robert Wittbold, a real-estate broker. At the trial of the case in Wayne county circuit court, a jury awarded plaintiff $7,500, and the circuit judge denied a motion *non obstante veredicto* and entered judgment.

On appeal, defendants argue several claims of error as to which we find the first decisive, "that defendants' charge concerning plaintiff was true, * * * that reasonable men could not differ thereon, and that the trial court should have granted defendants' motion for judgment *non obstante veredicto.*"

The charges with which we deal are contained in a statement to the Michigan corporation and securities commission written by Wittbold on a commission form provided for applying for a salesman's transfer to another broker and in a letter which he sent the commission. Plaintiff had asked defendants to fill out the form for her transfer, at which point they discharged her and sent the statement and letter which follow:

(on reverse side)

"I have discharged Marilyn H. Cochrane for what I consider to be a direct violation of the rules and regulations of the Michigan securities commission. The particular rule that has been violated is a rule which prohibits real estate people from purchasing for their own account listings without revealing to the seller that they are purchasing for their own account. This salesman asked me about the propriety of buying a piece of property which we had listed, and I informed her that it was O.K. provided the seller knew full well that she was a purchaser and was no longer acting as the seller's agent. Salesman proceeded to purchase the property, but instead of buying it in her own name, she had her parents buy it and she received a commission from the seller. Some time later it was pointed out to me that she had executed a conveyance as the owner of the property to a third party on the day that the deal had been closed. After finding this out, I talked to the original owners of the property and they feel as I do that acts of this kind should not be condoned. I asked the salesman to pay over to the original owners any profits she may have made on the transaction, but this she refused to do. If you want further details as to this case or should you care to investigate further, I shall be pleased to forward such details and documents as you may request."

"*Gentlemen:*

"I wish to cancel the application for the renewal of salesman's license of Marilyn H. Cochrane, as I have this day discharged her for what I consider to be a direct violation of the rules and regulations of the Michigan corporation and securities commission. * * *

"This salesman has asked for the transfer of her license to another broker, and I have refused, as I will not take the responsibility for helping to allow

a person who has committed such acts as described above, from continuing in the real estate business.

"Very truly yours,
"WITTBOLD & Co.
/s/ ROBERT L. WITTBOLD"

The undisputed evidence, including plaintiff's own testimony, shows the following regarding the transaction:

On March 19, 1955, a Mr. and Mrs. Dowling listed 6–1/2 acres on Grosse Ile for sale with the Wittbold firm. Plaintiff, as a Wittbold saleswoman, presented an offer of $1,000 an acre from a Mr. and Mrs. Mitchell which the Dowlings accepted on April 16th. Mr. and Mrs. Mitchell were actually plaintiff's father and mother who were buying the property for plaintiff. Plaintiff discussed the situation with Wittbold who told her that she could buy the property if she made full disclosure to the sellers.

On May 21, 1955, the transaction was closed. On the way to the closing, Mrs. Cochrane for the first time told Mrs. Dowling that the purchasers were relatives of hers. The closing statement included the language, "Seller has full knowledge that the salesman is related to the purchaser."

Mrs. Cochrane could not remember at trial whether or not the Dowlings were told that her mother and father were purchasing the property. Mrs. Dowling testified that they were not told.

It appears that as of May 21st, when such disclosure as is shown by this record was made, 3 important facts were not revealed:

(1) The purchasers were not only related, but were in fact plaintiff's mother and father;

(2) The purchase was being made by them for plaintiff;

(3) Plaintiff already had a binding agreement with a Mr. Anthony for her to sell him the property concerned at a price of $1,200 per acre.

As to these matters, plaintiff testified at cross-examination:

"*Q.* You purchased this property for your own account?

"*A.* No.

"*Q.* You did not?

"*A.* No. Indirectly yes, but actually no.

"*Q.* Indirectly you purchased it for your own account?

"*A.* Yes. I mean I asked my parents to purchase it.

"*Q.* In other words, you knew of the entire deal beforehand? In other words, before May 21st, you had this all set up, is that correct? That you were going to buy it and that you could make a profit and the commission on it?

"*A.* I had knowledge of it, yes.

"*Q.* Did you reveal to Mrs. Dowling that you were buying for your own account?

"*A.* No."

Within 2 days after the Dowling-Mitchell closing, the Mitchells assigned the land contract to plaintiff, and plaintiff in turn assigned it to Anthony.

The Dowlings were charged the regular commission on their sale, and plaintiff made an individual profit of $1,196 on the Anthony transaction.

Wittbold's uncontradicted testimony is that he first knew all these facts as a result of checking into a report to him made 2 or 3 months later by another real-estate broker who had found the recording of the assignment to plaintiff.

Wittbold thereupon discussed the matter with plaintiff and with the Dowlings. He did not, however, discharge plaintiff until March of 1956 when plaintiff presented him with the application form for transfer to another real-estate broker.

As a result of the communication previously quoted, plaintiff's license was suspended and a hear-

ing was held before a deputy commissioner on a charge of violation of Rule 6 of the rules and regulations of the Michigan corporation and securities commission:

"A broker shall not buy for himself either directly or indirectly property listed with him, nor shall he acquire any interest therein either directly or indirectly, without first making his true position clearly known to the listing owner." Michigan Administrative Code, 1954, § R 451.306.

Wittbold, though notified, did not appear or testify, and the complaint was dismissed and plaintiff's license restored.

Subsequently the instant suit for libel was started.

At trial, the judge instructed the jury that the only communications of the alleged libel proved were those to the corporation and securities commission. Plaintiff offered no request for instruction on this point and, when afforded an opportunity to object to the charge, specifically indicated no objection. The judge also instructed the jury that the communications to the corporation and securities commission were qualifiedly privileged* and, hence, that both their falsity and defendants' malice must be found antecedent to recovery. The charge as to qualified privilege accorded with defendants' requests, and defendants' counsel expressed satisfaction with the charge as a whole. Both parties, on appeal, now present objections to the charge, which we will not discuss or decide since they were not presented at trial below and are not necessary to decision here.

On the charge as given, we must, of course, read the jury verdict as finding that defendants' communications to the corporation and securities commission were false and maliciously made.

---

* The determination of the existence of a privilege is normally a question for the court. See discussion in *Lawrence* v. *Fox,* 357 Mich 134, 139.

· We do not invade the fact-finding authority of the jury or remand for entry of judgment *non obstante veredicto*, as sought by defendants herein, unless the factual record is so clear that reasonable minds may not disagree. See *Churukian* v. *LaGest*, 357 Mich 173. This is, in our view, such a case.

We simply do not find any dispute as to the relevant facts. The factual allegations as to plaintiff's conduct are these:

"Salesman proceeded to purchase the property, but instead of buying it in her own name, she had her parents buy it and she received a commission from the seller. Some time later it was pointed out to me that she had executed a conveyance as the owner of the property to a third party on the day that the deal had been closed."

These allegations are uncontradicted, with the exception of the immaterial fact that the third party conveyance was made "within 2 days," rather than "on the day the deal had been closed."

The claim of falsity really is addressed to defendants' stated conclusion that these acts represented a violation of the rules of the corporation and securities commission. As to this, the jury may well have been led, by the restoration of plaintiff's license, to conclude that the decision of the deputy commissioner was a determination of the falsity of the violation charge, and that the determination was binding on them.

Whatever the proofs may have shown at the license hearing, we believe that the acts of plaintiff, which are established beyond dispute by this record, represent both a violation of the corporation and securities commission rule, and a violation of the public policy of this State.

Common law establishes the principle upon which Rule 6 is based, that an agent may not serve himself while purporting to serve and accepting a fee from

his principal without the fullest and most complete disclosure to the principal. *Moore* v. *Mandlebaum,* 8 Mich 433; *McKay* v. *Williams,* 67 Mich 547 (11 Am St Rep 597); *McNutt* v. *Dix,* 83 Mich 328 (10 LRA 660); *Beedle* v. *Crane,* 91 Mich 429 (26 ALR2d 1307).

Justice Cardozo, while on the New York bench, put the matter this way:

"If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance *(Dunne* v. *English,* LR 18 Eq 524 [31 LT 75]; *Imperial Mercantile Credit Assn.* v. *Coleman,* LR 6 HL 189)." *Wendt* v. *Fischer,* 243 NY 439, 443 (154 NE 303, 304).

There are in this record facts to support a finding of malice on the part of defendants. The jury finding on this point may have rested on the unexplained delay in defendants' indignation about this deal and the coincidence of their complaints and plaintiff's statement of intention to leave their employment.

Nonetheless, the damaging statements contained in the publications were true when compared to plaintiff's own testimony.

Recovery in a libel action cannot be predicated upon defamatory charges which are proven to be true. *Sullings* v. *Shakespeare,* 46 Mich 408 (41 Am Rep 166); *Hysko* v. *Polonia Publishing Co.,* 239 Mich 676; *Noth* v. *Evening News Association,* 338 Mich 359.

The motion for verdict *non obstante* should have been granted.

Reversed. Costs to appellants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.