## WINSTEAD v SWEENEY

Docket No. 142459. Submitted February 15, 1994, at Detroit. Decided
June 20, 1994, at 9:20 A.M. Leave to appeal sought.

Denise Winstead brought an action in the Wayne Circuit Court
against Ann Sweeney and Gannett Company, Inc., alleging
invasion of privacy by the publication of an article in The
Detroit News that included embarrassing private facts that had
been obtained from the plaintiff's former husband. Although
the article identified people only by first names, the plaintiff
alleged that her family, friends, and employer equated the
"Denise" in the article with her. The court, William J. Giovan,
J., granted summary disposition for the defendants, concluding
that the article concerned a newsworthy matter and, thus, was
privileged. The plaintiff appealed.

The Court of Appeals *held:*

1. The First Amendment protects newspapers from actions
for invasion of privacy where publication of private facts that
otherwise would constitute an invasion of privacy involves
information of legitimate public concern, i.e., is newsworthy.
Whether particular information is newsworthy turns on
whether the public reasonably may be expected to have a
legitimate interest in what is published.

2. Where, as here, there are legitimate differences of opinion
concerning whether the information published is a matter of
legitimate public concern, the question is one of fact that is for
the trier of fact. The trial court erred in holding, as a matter of
law, that the information in the article at issue here was
newsworthy and that the privilege applied. Whether the infor-
mation published was newsworthy is a question that must be
answered by a jury. Accordingly, summary disposition for the
defendant must be set aside, and the matter must be remanded
for further proceedings.

Reversed and remanded.

REFERENCES

Am Jur 2d, Privacy §§ 38, 58, 59, 73, 91, 93, 185, 186, 188, 230, 231.
Intrusion by news-gathering entity as invasion of right of privacy.
69 ALR4th 1059.

1. PRIVACY — INVASION OF PRIVACY — NEWSPAPERS — PRIVILEGE.

    The First Amendment protects newspapers from actions for invasion of privacy where publication of private facts that otherwise would constitute an invasion of privacy involves information of legitimate public concern.

2. PRIVACY — INVASION OF PRIVACY — LEGITIMATE PUBLIC CONCERNS — QUESTIONS OF FACT.

    Whether a matter is of legitimate public concern for the purpose of a newspaper's assertion of privilege in an action for invasion of privacy is a question of fact to be determined by the trier of fact where there are legitimate differences of opinion concerning whether the information published is a matter of legitimate public concern.

*Geno T. Zayid,* for the plaintiff.

*Butzel Long* (by *James E. Stewart* and *Leonard M. Niehoff*), for the defendants.

Before: CORRIGAN, P.J., and J.H. GILLIS, SR.,* and C. H. STARK,** JJ.

J. H. GILLIS, SR., J. Plaintiff appeals a June 17, 1991, Wayne Circuit Court order granting defendants' motion for summary disposition and dismissing her complaint based on invasion of privacy by publication of embarrassing private facts and on gross negligence. On appeal, plaintiff claims that the court improperly decided questions that should have been left for the trier of fact. Having considered the factual record in full, *Locricchio v Evening News Ass'n,* 438 Mich 84, 110, n 14; 476 NW2d 112 (1991), — US — cert den 112 S Ct 1267 (1992), we reverse and remand for further proceedings.

    Plaintiff's claims arise out of an article appearing in the "Accent" section of The Detroit News

    * Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1993-6.

    ** Circuit judge, sitting on the Court of Appeals by assignment.

on February 16, 1989. Defendant Ann Sweeney was the author of the article. The focus of the article was unique love relationships involving friends or family members of former mates. The Detroit News solicited information for the article by running an advertisement in the paper. Plaintiff's former husband apparently responded to the advertisement and related details of his relationship with plaintiff and a couple with whom they were friends. The article included the former husband's story in quotation marks and identified the persons involved by their first names only. There were no age references, no career references, no location references, or other specific and obvious identifying facts in the article beyond the use of the first names.

The details of the article included that "Denise" had several abortions, engaged in partner swapping, and was involved in a surrogate parenting relationship with her former husband, "Tim," and her maid of honor, "Linda," because "Denise" was unable to have children. Plaintiff filed suit, alleging that the article invaded her privacy by publishing embarrassing private facts that others who were close to her had not known before the article was published. Specifically, plaintiff alleged that her husband, friends, family, and boss had not known about the events that were within the article, but upon reading the article immediately equated plaintiff with "Denise." Plaintiff also included a count of gross negligence in her complaint.

Defendants answered the complaint and, as an affirmative defense, raised the defense of privilege under the common law of Michigan, the Michigan Constitution, and the First Amendment of the United States Constitution. On February 15, 1991, defendants moved for summary disposition pursu-

ant to MCR 2.116(C)(8) (failure to state a claim) and 2.116(C)(10) (no genuine issue of material fact). In support of the motion, defendants averred that it was plaintiff's former husband who revealed the information, that he had every prerogative to do so, that the information within the article was privileged because it was "newsworthy," and that many of plaintiff's friends and relatives were already aware of the facts revealed in the article. With respect to the count alleging gross negligence, defendants alleged that the publication was protected by the First Amendment and that, as a matter of law, no claim could be stated. Plaintiff contested the motion, and a hearing was conducted, following which the court took the matter under advisement to further consider the newsworthy defense.[1]

On June 7, 1991, the court issued a ruling from the bench. The court concluded that the newsworthy defense applied to this situation as a matter of law, speculating that this Court would continue to follow the approach of the Restatement of Torts of providing broad protection for the press and its reporting of newsworthy information. See 3 Restatement Torts, 2d, § 652D, comments d, j, pp 388, 393. Thereafter, the court granted defendants' motion for summary disposition, from which plaintiff now appeals.[2]

Plaintiff's suit is based upon an alleged invasion

[1] Although the parties contend that a hearing was conducted, neither party has filed the transcript of the oral argument in this Court. Accordingly, we confine our resolution of this matter to the pleadings and documents filed in conjunction with the motion.

[2] Implicit in the court's dismissal of the count for invasion of privacy was a dismissal of the gross negligence count. Plaintiff has not specifically challenged the dismissal of the gross negligence count in this Court. Although we concentrate our discussion on the invasion of privacy theory in this opinion, the trial court may reconsider its dismissal of the gross negligence count on remand to the extent that the trial court deems it necessary.

of the right to privacy and is grounded in the common-law theory recognizing liability for public disclosure of embarrassing private facts. See generally *Beaumont v Brown,* 401 Mich 80, 93-98; 257 NW2d 522 (1977). In order to sustain such a claim, plaintiff must demonstrate that the disclosed information is highly offensive to a reasonable person and that the information is of no legitimate concern to the public. *Fry v Ionia Sentinel-Standard,* 101 Mich App 725, 728; 300 NW2d 687 (1980) (adopting the definition in 3 Restatement Torts, 2d, § 652D, p 383). The information published must concern the individual's private life and must not have been a matter of public record or otherwise exposed to the public eye. *Ledsinger v Burmeister,* 114 Mich App 12, 24; 318 NW2d 558 (1982); *Fry, supra* at 729.

Even where an action for invasion of privacy otherwise might lie, the First Amendment sometimes protects the media from such an action. *Cox Broadcasting Corp v Cohn,* 420 US 469; 95 S Ct 1029; 43 L Ed 2d 328 (1975); *Gilbert v Medical Economics Co,* 665 F2d 305, 307 (CA 10, 1981). As stated by the court in *Gilbert,* this "constitutional privilege" applies in cases where it is alleged that the defendant invaded the plaintiff's privacy through the publication of private facts. *Id.* In making the determination whether the privilege applies, it is of paramount importance to determine whether the information published is of legitimate public concern (i.e., is newsworthy). See *Fry, supra* at 729-730. Virtually every case we have reviewed in this area adopts or cites with approval the provisions of the Restatement of Torts in this regard. *Id.* See also *Time, Inc v Hill,* 385 US 374, 388-389; 87 S Ct 534; 17 L Ed 2d 456 (1967); *Gilbert, supra* at 307-308; Prosser & Keeton, Torts (5th ed), § 117, pp 860-861, and cases cited therein.

The Restatement of Torts includes the following parameters within which the press should operate in this regard:

> When the matter to which publicity is given is true, it is not enough that the publicity would be highly offensive to a reasonable person. The common law has long recognized that the public has a proper interest in learning about many matters. When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy. [3 Restatement Torts, 2d, § 652D, comment d, p 388.]

One such matter of public concern is that information commonly referred to as "news." The Restatement's position on what constitutes "news" is as follows:

> Included within the scope of legitimate public concern are matters of the kind customarily regarded as "news." To a considerable extent, in accordance with the mores of the community, the publishers and broadcasters have themselves defined the term, as a glance at any morning paper will confirm. Authorized publicity includes publications concerning homicide and other crimes, arrests, police raids, suicides, marriages and divorces, accidents, fires, catastrophes of nature, a death from the use of narcotics, a rare disease, the birth of a child to a twelve-year-old girl, the reappearance of one supposed to have been murdered years ago, a report to the police concerning the escape of a wild animal and many other similar matters of genuine, even if more or less deplorable, popular appeal. [*Id.*, comment g, pp 390-391.]

More appropriate to the circumstances in this case is the Restatement's position with respect to "[e]ducation and information":

> The scope of a matter of legitimate concern to the public is not limited to "news," in the sense of reports of current events or activities. It extends also to the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published. [*Id.,* comment j, p 393.]

See also *Fry, supra* at 730. As one court put it, liability under this theory is saved for those extreme cases where an editor abuses the broad discretion to publish matters that are of legitimate public interest. *Gilbert, supra* at 308.

In *Campbell v Seaberry Press,* 614 F2d 395, 397 (CA 5, 1980), the court explained the scope of the privilege as follows:

> [T]he privilege extends to information concerning interesting phases of human activity and embraces all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period. *See generally Time, Inc v Hill,* 385 US at 388; 87 S Ct at 542; 17 L Ed 2d at 467; *Thornhill v Alabama,* 310 US 88, 102; 60 S Ct 736, 744; 84 L Ed 1093, 1102 (1940). The ambit of protection offered by the . . . privilege often encompasses information relating to individuals who either have not sought or have attempted to avoid publicity. . . . The privacy of such individuals is protected, however, by requiring that a logical nexus exist between the complaining individual and the matter of legitimate public interest.

In *Campbell,* the United States Court of Appeals upheld the district court's grant of summary judgment in favor of the defendants because the district court properly determined that there was a

logical nexus between the facts published about the plaintiff and the matter of public interest. *Id.*

Notwithstanding the apparent breadth of the privilege, it is not unlimited. According to the Restatement:

> The extent of the authority to make public private facts is not, however, unlimited. There may be some intimate details of her life, such as sexual relations, which even the actress is entitled to keep to herself. In determining what is a matter of legitimate public interest, account must be taken of the customs and conventions of the community; and in the last analysis what is proper becomes a matter of the community mores. The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern. [3 Restatement Torts, 2d, § 652D, comment h, p 391.]

See also *Virgil v Time, Inc,* 527 F2d 1122, 1129 (CA 9, 1975).

In this case, plaintiff asserts that the trial court improperly usurped the role of the factfinder by concluding, as a matter of law, that the matters published in the instant article were newsworthy. Plaintiff argues that, where reasonable minds could differ concerning the newsworthy quality of the information disseminated, the case should go to the finder of fact. On the other hand, defendants claim that the issue is one of law that must be decided by the trial court.

We conclude that the issue is a mixed question of law and fact and do not agree with defendants that, in every case, the privilege must be decided by the trial court as a matter of law. Rather, in

certain rare cases, it is necessary to defer to the
fact-finding process to gain a result that is fair and
representative of the attitudes of the community.
See *id.* at 1129, n 12.

In *Virgil,* Sports Illustrated Magazine was inter-
ested in publishing an article about body surfers in
California. The plaintiff was a body surfer who
initially consented to being a subject of the article.
When the plaintiff learned that the article would
cover areas of his private life beyond that involv-
ing surfing, he withdrew his consent to the article.
Nonetheless, Sports Illustrated printed the article,
prompting the plaintiff to file suit for invasion of
privacy. The district court concluded that fact
issues remained concerning the nature of the in-
formation in the article and denied the defendant's
motion for summary judgment. The United States
Court of Appeals remanded the case to the district
court for reconsideration in light of principles
announced in the opinion.

The *Virgil* court concluded as follows:

> We cannot agree that the First Amendment
> requires that the [public interest] question must be
> confined to one of law to be decided by the judge.
> Courts have not yet gone so far in other areas of
> the law involving First Amendment problems,
> such as libel and obscenity. The testing of facts
> against a standard founded on community mores
> does entail judgment of the court itself. But if
> there is room for differing views as to the state of
> community mores or the manner in which it
> would operate upon the facts in question, there is
> room for the jury function. The function of the
> court is to ascertain whether a jury question is
> presented. [*Id.* at 1130.]

Other courts have agreed that factual questions
regarding the newsworthy nature of particular
information may be submitted to a jury. See *Capra*

*v Thoroughbred Racing Ass'n of North America, Inc,* 787 F2d 463, 464 (CA 9, 1986); *Gilbert, supra* at 309; *Times Mirror Co v Superior Court,* 198 Cal App 3d 1420, 1429; 244 Cal Rptr 556 (1988), cert den 489 US 1094 (1989); *Diaz v Oakland Tribune, Inc,* 139 Cal App 3d 118, 133; 188 Cal Rptr 762 (1983); *Hall v Post,* 85 NC App 610, 623; 355 SE2d 819 (1987).

In *Beaumont v Brown, supra,* our Supreme Court evaluated the tort of private disclosure of embarrassing private facts. On two separate occasions within the opinion, the Court concluded that fact questions regarding certain elements of the tort existed and should have been submitted to the jury. 401 Mich 95, 105. Those elements were whether the facts revealed in the document at issue constituted "embarrassing private facts" and whether a "publication" had taken place. In view of our Supreme Court's inclination to permit the jury to consider the elements of the tort where fact questions remain, we see no reason why the jury should not also be permitted to evaluate the newsworthiness defense where issues of fact remain.

We have little doubt that any reasonable person would conclude that the facts disclosed by defendants in this case constitute facts about plaintiff that have caused her embarrassment. To so demonstrate, we quote directly from the relevant portion of the article at issue:

> " 'I wanted children, but Denise couldn't have kids because she had several abortions before we got married. Then Denise got this bright idea that Linda could be our surrogate mother.
>
> Linda said she was willing to have a baby for us, but she couldn't give it up afterwards. She said the three of us could live together.
>
> It seemed possible—I mean we were already in

the same house and when Linda was still married, we used to swap partners once in a while. So we tried it for several months.' "

In this case, the dispute focuses on the question whether these facts are newsworthy. That question is not answered easily because, although it is without question that the subject of the article (unique love relationships) constitutes a newsworthy topic as that term has been defined in the cases and the Restatement, the facts revealed about plaintiff are not so clearly newsworthy. Many of the courts that have struggled with this issue have made it a point to focus not only on the newsworthiness of the topic itself, but also upon the facts disclosed about the plaintiff. See *Ross v Midwest Communications, Inc,* 870 F2d 271, 273-275 (CA 5, 1989); *Gilbert, supra; Virgil, supra; Times Mirror, supra,* 198 Cal App 3d 1429.

We agree with the court in *Virgil, supra* at 1131, where it stated:

The fact that [persons] engage in an activity in which the public can be said to have a general interest does not render every aspect of their lives subject to public disclosure. Most persons are connected with some activity, vocational or avocational, as to which the public can be said as a matter of law to have a legitimate interest or curiosity. To hold as a matter of law that private facts as to such persons are also within the area of legitimate public interest could indirectly expose everyone's private life to public view.

In this case, the court erred in granting summary disposition by focusing solely on the newsworthiness of the topic addressed in the article published by defendants, rather than also evaluating the particular facts that were revealed in the article. See *Gilbert, supra* at 308. Accordingly, we remand

this matter to the trial court for a determination whether reasonable minds could differ concerning whether the information published about plaintiff was of legitimate public interest.

In determining whether those facts that have been revealed are of legitimate public interest, the court should focus first on those factual situations discussed in the relevant sections of the Restatement. If the court can determine, as a matter of law, whether the facts are within the realm of the public interest, then summary disposition for the prevailing party would be appropriate. However, if after consulting the relevant sections of the Restatement and reviewing the case law, the court concludes that reasonable minds could differ concerning the newsworthiness of the information, then the issue should be submitted to the jury. In the event that the issue is to be submitted to the jury, the court shall instruct the jury regarding the newsworthiness defense consistent with the applicable sections of the Restatement and the case law.[3]

While we recognize the potential danger inherent in placing the issue of newsworthiness in the hands of the jury, we believe that defendants overstate the outcome of such a decision. Our Supreme Court has placed the determination of "constitutional facts" in the hands of juries in the past. *Rouch v Enquirer & News of Battle Creek (After Remand),* 440 Mich 238, 255; 487 NW2d 205

[3] In at least one other jurisdiction, the courts have articulated a three-pronged test to determine whether an incident is newsworthy. In *Times Mirror Co v Superior Court, supra,* 198 Cal App 3d 1420, 1428, the court stated that in making this determination, the trial court (or jury) is to consider (1) the social value of the published facts, (2) the extent of the intrusion into the ostensibly private matters, and (3) the extent to which the party voluntarily assumed a position of notoriety. See also *Capra, supra,* 787 F2d 464. We agree that these are relevant considerations that have at least some support in the Restatement and may be considered by the court, or the jury in the event that it becomes necessary. See 3 Restatement Torts, 2d, comment h, p 391.

(1992), cert den — US —; 113 S Ct 1401 (1993).[4] In fact, in *Rouch,* the Court addressed the very concerns that defendants raise in the instant case regarding the placement of the newsworthy issue in the hands of the jury. The Court stated that in response to the concern that juries may give "short shrift" to the First Amendment, independent appellate judicial review of the entire record was appropriate. *Id.* at 258. That is a concept that can apply with equal force to this case in the event that the court on remand determines that the jury should evaluate the newsworthy defense. See *Virgil, supra* at 1130, n 13 (addressing this concern with respect to the newsworthy privilege).

One final issue is worthy of our comment. In their brief on appeal, defendants claim that because plaintiff's former husband clearly could have repeated the story, any culpability of defendants is removed thereby.[5] We cannot agree. In support of their argument in this regard, defendants cite *Campbell, supra.* However, we conclude that there is a distinguishing characteristic between *Campbell* and this case. In *Campbell,* the plaintiff sued the defendants because they revealed private information about her family life in the context of an autobiography of her brother-in-law's life. The plaintiff alleged that there was no logical nexus between the information printed in the book about

---

[4] Constitutional facts are those facts that are fundamental to the existence of a constitutional right. *Rouch, supra* at 255, n 19. In this instance, fundamental to the question whether defendants are exercising their fundamental right to freedom of the press is the ultimate factual conclusion regarding whether the information published in the article was newsworthy. If so, then defendants must prevail.

[5] We similarly find unpersuasive defendants' claim that because many of the persons who were able to identify plaintiff already knew some of the information, plaintiff's claim was properly dismissed. The trial court did not dismiss the claim for this reason. In any case, we believe that if some persons knew some of the information, that is a question of damages. Nowhere in their brief on appeal do defendants demonstrate that plaintiff's husband knew the information, nor do they demonstrate without question that all of the persons knew everything.

her personal life and the biographical information about her brother-in-law. On appeal, the United States Court of Appeals disagreed, concluding that there was a nexus between the information and the topic of the book. See *Campbell, supra,* 614 F2d 397.

In this case, that is an issue that was not addressed fully in the trial court. On the record as developed, we are not prepared to say that, as a matter of law, there is a logical nexus between the information published about plaintiff in the article and the topic of the article. On remand, the trial court should examine the issue after further development of the record. The trial court should focus specifically on the information printed about plaintiff, including the revelation of her first name, the fact that she had several abortions in the past, the fact that she engaged in the practice of "spouse swapping," and the fact that she was infertile, to determine whether the information was sufficiently connected to the topic to justify application of the privilege.[6]

With respect to defendants' claim that the information was already public and that plaintiff's former husband had every right to tell his story, we do not necessarily agree.

In *Virgil, supra,* 527 F2d 1127, the court concluded that it was not determinative that the plaintiff had told his story to the reporter for Sports Illustrated, because he had later withdrawn the consent to publicize. In so concluding, the court stated:

> Talking freely to a member of the press, knowing the listener to be a member of the press, is not then in itself making public. Such communication can be said to anticipate that what is said will be

---

[6] We conclude that defendants' reliance upon *Dresbach v Doubleday & Co, Inc,* 518 F Supp 1285 (D DC, 1981), is premature for the same reasons. See *id.* at 1290-1291.

made public since making public is a function of the press, and accordingly such communication can be construed as consent to publicize.

Although it is true that plaintiff's former husband consented to the publication of certain aspects of his conduct and that consent would likely be a valid defense if he were the plaintiff, we doubt that such a defense would be applicable where, as here, defendants have published private facts that may prove to be unnewsworthy about a nonconsenting person as well.[7]

In any case, even if it were true that plaintiff's former husband had an absolute First Amendment right to tell his story, including those facts revealed in this case, because he is not a defendant, we question whether these defendants can assert that right in their defense. Just because plaintiff's former husband took it upon himself to reveal the private facts to defendants, it does not follow that defendants thereby automatically are absolved from liability for printing that information. If such were the case, a media defendant could publish any material it wished as long as it received the consent of the one communicating the information. In truth, there are clear exceptions to the First Amendment freedom of the press that limit the right for policy reasons (i.e., obscenity, fighting words, defamatory information). In a case such as this, defendants' privilege is limited to that which is determined to be newsworthy. See *Gilbert, supra* at 308.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[7] We find this to be particularly so where, as here, there did not exist any legal relationship between plaintiff and her former husband such that his consent could also be construed to speak for her as well.