## PORTER v CITY OF ROYAL OAK

Docket No. 164109. Submitted October 3, 1995, at Detroit. Decided
December 1, 1995, at 9:05 A.M. Leave to appeal sought.

Mark A. Porter, who used to be a Royal Oak police sergeant,
brought an action in the Oakland Circuit Court against the
City of Royal Oak and others, alleging defamation, invasion of
privacy through placement in false light and public disclosure
of private facts, and violation of public policy. The plaintiff had
been disciplined at work for not dispatching police officers to
the home of a man who killed himself. Members of the man's
family had repeatedly told the police that the man was suicidal
on the day he killed himself and on the preceding day. The
disciplinary actions had been disclosed by the defendants to the
news media, who then reported it to the public. The discipli-
nary actions also had been upheld in a grievance proceeding
before an arbitrator and in appeals to the circuit court and the
Court of Appeals, HOOD, P.J., and REILLY and M. MORRIS, JJ.,
unpublished opinion per curiam, issued April 13, 1995 (Docket
No. 163682). In the present action, the circuit court, Fred M.
Mester, J., granted summary disposition for the defendants.
The plaintiff appealed.

The Court of Appeals *held:*

1. The circuit court did not err in summarily dismissing the
defamation claim. Truth is an absolute defense to a claim of
defamation. Collateral estoppel precludes the plaintiff from
relitigating the truth of the misconduct charges and of the
public disclosure of the disciplinary actions, as determined by
the arbitrator, the circuit court, and the Court of Appeals in
the prior proceedings.

2. The circuit court did not err in summarily dismissing the
claim of false light invasion of privacy. Truth is a defense to
this claim. The truth of the misconduct charges and the public
disclosure of the disciplinary actions were established in the

REFERENCES

Am Jur 2d, Judgments §§ 517, 519; Libel and Slander §§ 13, 268,
269; Privacy §§ 91-119, 120-171, 221, 260.

See ALR Index under Collateral Estoppel; Libel and Slander; Pri-
vacy.

prior proceeding, and collateral estoppel bars the plaintiff from relitigating these issues. The plaintiff cannot establish that public disclosure of the disciplinary actions placed him in a false light.

3. The circuit court did not err in summarily dismissing the claim of violation of public policy. It was established in the prior proceedings that the plaintiff had not been disciplined for refusing to order police officers to illegally enter the suicide victim's home. Collateral estoppel bars the plaintiff from claiming that he was disciplined for this reason and in violation of public policy.

4. The circuit court did not err in summarily dismissing the claim of invasion of privacy through public disclosure of private facts. The disciplinary actions taken against the plaintiff were matters of legitimate concern to the public and their disclosure cannot serve as a basis for an action of invasion of privacy through public disclosure of private facts.

Affirmed.

JANSEN, J., concurring in part and dissenting in part, stated that the circuit court erred in summarily dismissing the claim of invasion of privacy through public disclosure of private facts. The question whether the disciplinary action taken against the plaintiff was of legitimate interest to the public should be resolved by a jury in light of the plaintiff's expectation under a collective bargaining agreement and the Employee Right to Know Act, MCL 423.501 et seq.; MSA 17.62(1) et seq., that the disciplinary actions would not be disclosed to the public.

1. ESTOPPEL — COLLATERAL ESTOPPEL.

Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding.

2. LIBEL AND SLANDER — DEFENSES — TRUTH.

Truth is an absolute defense to a defamation claim.

3. PRIVACY — INVASION OF PRIVACY — FALSE LIGHT.

In order to maintain an action for false light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position.

4. PRIVACY — INVASION OF PRIVACY — PUBLIC DISCLOSURE OF PRIVATE
     FACTS.

> A cause of action for public disclosure of private facts requires
> the disclosure of information that would be highly offensive to
> a reasonable person and of no legitimate concern to the public;
> the information disclosed must be of a private nature that
> excludes matters already of public record or otherwise open to
> the public eye.

*Mueckenheim & Mueckenheim, P.C.* (by *Robert
C. Mueckenheim*), for the plaintiff.

*Barlow & Lange, P.C.* (by *Craig W. Lange* and
*Matthew S. Derby*), for the defendants.

Before: GRIFFIN, P.J., and JANSEN and M. E.
CLEMENTS,* JJ.

GRIFFIN, P.J. Plaintiff appeals as of right an
order of the circuit court granting defendants'
motion for summary disposition pursuant to MCR
2.116(C)(10). We affirm.

I

On March 30, 1990, plaintiff, Mark Porter, was a
sergeant of the Royal Oak Police Department in
charge of the midnight shift. At the beginning of
this shift, plaintiff was briefed regarding an ongo-
ing situation at the residence of Jerry Heaps.
Plaintiff was informed that Mrs. Heaps had filed a
criminal sexual conduct complaint against her
husband the previous day and that Mr. Heaps had
contacted relatives about his intention of commit-
ting suicide. Jerry Heaps, who was alone in the
residence, was reportedly violent, intoxicated, and
in possession of firearms. As the evening prog-
ressed, the Royal Oak Police Department received
numerous telephone calls regarding the situation.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

These callers expressed severe concern regarding Mr. Heaps' mental or physical well-being. Along with other information, the callers related the following: (1) Heaps had taken a large number of Tylenol pills and had been drinking vodka all day; (2) Heaps' family had repeatedly sought information about committing Heaps to a mental institution; (3) Heaps' relatives wanted to enter Heaps' house but were afraid because Heaps was violent and possessed weapons; and (4) Heaps' brother heard a popping sound similar to the firing of a small caliber weapon emanate from Heaps' house.[1] Despite requests from Heaps' family members for police assistance, plaintiff never dispatched any officers to the scene. The next morning, Heaps was found dead in his home. An autopsy disclosed that

---

[1] According to an arbitrator's written summation, the Royal Oak Police Department received the following calls regarding Heaps' situation on March 30, 1990, and March 31, 1990: (1) at 11:54 P.M., Mr. Heaps' daughter Robin called to request the telephone number of the Oakland County Crisis Center; (2) at 12:18 A.M., a person identifying himself as Heaps' brother told police that he had heard "a loud popping noise like a small caliber weapon" come from Heaps' house; (3) at 12:30 A.M., a person named Mrs. Skully phoned to tell police that Heaps had just called her daughter to tell her "goodbye" and that Heaps had taken twenty-five Tylenol pills and had been drinking vodka since morning; (4) at 12:52 A.M., Heaps' sister, Julie, called to express concern about Heaps' condition and request information concerning how to contact the prosecutor regarding involuntary commitment; (5) at 1:06 A.M., Heaps' daughter Lisa called to express a desire to enter Heaps' home but stated that an entry was risky because Heaps was violent and had weapons; (6) at 1:07 A.M., Robin Heaps again called to ask how Heaps could be committed to a mental institution; (7) at 1:27 A.M., the local sheriff's department called to warn of a reported suicide attempt at Heaps' home; (8) at 1:41, A.M., Heaps' sister, Julie, again called to discuss involuntary mental commitment and request that police accompany the family when they entered Heaps' house; (9) at 2:02 A.M., Heaps' daughter Lisa called to indicate that Heaps had taken twenty-five Tylenol pills and had been drinking all day and to request that a police officer assist them in entering Heaps' unlocked premises; (10) at 2:11 A.M., Heaps' daughter Robin again called to request police assistance when she entered Heaps' house; (11) at 2:43 A.M., Heaps' brother again reported having heard a loud pop that sounded like a small caliber weapon; (12) at 9:11 A.M., Heaps' brother called to relate the events that had occurred the night before.

Heaps had died shortly after midnight from a self-inflicted gunshot wound.

Royal Oak Police Chief Richard G. Kemp ordered an immediate internal investigation.[2] Plaintiff was subsequently charged and found responsible for nine different counts of having failed to properly perform his duties as an officer.[3] As a disciplinary action, plaintiff was demoted, suspended, placed on one-year probation, and precluded from holding or applying for certain positions for one year. A memorandum listing the discipline imposed on plaintiff was shown to media representatives.[4] Although it is not clear from the

---

[2] Plaintiff was suspended with pay during the pendency of the investigation.

[3] Plaintiff was charged with and found responsible for the following misconduct: (1) failing to investigate a reported gunshot; (2) failing to respond to a possible suicide by drug overdose; (3) exposing Heaps' family to extreme danger by advising them to investigate a reported suicide attempt with knowledge that the suspect was extremely dangerous; (4) failing to contact the Oakland County deputy prosecutor regarding an emergency commitment; (5) misleading the police department by submitting inaccurate and incomplete information in reports; (6) conduct unbecoming of an officer that resulted in the police department being subjected to public censure; (7) being untruthful during the investigation of an incident; (8) failing to properly discharge his duties as a command officer; and (9) failing to properly supervise personnel.

[4] The memorandum provided as follows:

Based on facts and information obtained through an internal investigation it has been determined that Sergeant Mark A. Porter did violate established Police Department policies, procedures, practices, as well as infractions of the following Rules and Regulations of the Department:

Chapter I - General Conduct; Chapter IV - Duty; Chapter IX - Departmental Matters; Chapter XIV - General Conduct; and Chapter XXII - Primary Responsibilities.

Therefore, the following discipline has been invoked effective April 27, 1990:

(a) Demoted to the classification of Police Officer; (b) Suspended without pay for ten (10) working days, effective April 28th through May 11th; (c) Placed on probation for one (1) year, effective April 28, 1990 through April 27, 1991; (d) Prohibited from applying for a promotional position to Sergeant during probationary period; and, (e) Prohibited from bidding for, or

record whether any of the stories preceded the issuance of the memorandum, plaintiff's disciplinary proceedings became the subject of at least one television news story and at least three newspaper articles.

Plaintiff filed a labor grievance. Following a hearing, an arbitrator affirmed the disciplinary action after finding sufficient evidence to support the charges and the disciplinary action. Plaintiff thereafter appealed to the circuit court. In a decision that was later affirmed by this Court, the circuit court upheld the arbitrator's decision. See *Porter v Royal Oak,* unpublished opinion per curiam of the Court of Appeals, issued April 13, 1995 (Docket No. 163682).

On April 26, 1991, plaintiff filed the present action in the Oakland Circuit Court, claiming that defendants (1) communicated to the media false, noncontextual, and defamatory information; (2) invaded his privacy by publicly disclosing private facts and placing him in a false light; (3) violated public policy by disciplining him for failing to take an action that would have violated Heaps' constitutional rights; and (4) violated provisions of the Employee Right to Know Act, MCL 423.501 *et seq.*; MSA 17.62(1) *et seq.*

The circuit court granted defendants' motion for summary disposition of the first three counts pursuant to MCR 2.116(C)(10). Plaintiff's claim based on the Employee Right to Know Act (count four) was dismissed pursuant to a stipulation of the parties.[5]

In granting summary disposition, the lower

being assigned to, any assignment in the Communication Center during probationary period.

[5] The dissent erroneously assumes that defendants violated the Employee Right to Know Act and the collective bargaining agreement. No such admission or adjudication has been made. The merit of

court ruled that because the truth of the charges against plaintiff had been established in the grievance proceeding, plaintiff was estopped from relitigating the factual basis of the charges. The circuit court dismissed plaintiff's defamation, invasion of privacy, and public disclosure of private fact claims on the ground that truth is an absolute defense. Also, the lower court dismissed plaintiff's violation of public policy claim on the basis that plaintiff had been disciplined for failing to respond to a report of a possible gunshot and drug overdose, not for refusing to break into Heaps' home.

II

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim. *Panich v Iron Wood Products Corp,* 179 Mich App 136, 139; 445 NW2d 795 (1989). In deciding such a motion, the trial court must consider the pleadings, depositions, affidavits, admissions, and other documentary evidence, MCR 2.115(G)(5), and must give the nonmoving party the benefit of every reasonable doubt. *Radtke v Everett,* 442 Mich 368, 373; 501 NW2d 155 (1993); *Rice v ISI Mfg, Inc,* 207 Mich App 634, 635-636; 525 NW2d 533 (1994); *Morganroth v Whitall,* 161 Mich App 785, 788; 411 NW2d 859 (1987). Although the court should be liberal in finding genuine issues of material fact, summary disposition is appropriate when the party opposing the motion fails to provide evidence to establish a material factual dispute. *McCart v J Walter Thompson USA, Inc,* 437 Mich 109, 115; 469 NW2d 284

such a claim is not clear. See generally *Newark Morning Ledger Co v Saginaw Co Sheriff,* 204 Mich App 215; 514 NW2d 213 (1994).

(1991); *Mascarenas v Union Carbide Corp,* 196 Mich App 240, 243; 492 NW2d 512 (1992).

### III

Plaintiff argues that the circuit court erred in granting summary disposition in favor of defendants on the ground that plaintiff was collaterally estopped from contesting the factual conclusions made by the arbitrator in the grievance proceeding. We disagree. Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding. *People v Gates,* 434 Mich 146, 154; 452 NW2d 627 (1990); *Bullock v Huster,* 209 Mich App 551, 556; 532 NW2d 202 (1995). This principle likewise applies to factual determinations made during grievance hearings or arbitration proceedings. *Fulghum v United Parcel Service, Inc,* 130 Mich App 375, 377; 343 NW2d 559 (1983), aff'd 424 Mich 89, 92; 378 NW2d 472 (1985); see *Lumbermen's Mutual Casualty Co v Bissell,* 220 Mich 352, 354; 190 NW 283 (1922).

In the present case, we hold that the circuit court correctly ruled that plaintiff was estopped from contesting the determinations made in the grievance proceeding. Because plaintiff is unable to establish facts essential to support his defamation, false light invasion of privacy, and public policy claims, the circuit court correctly granted defendants' motion for summary disposition of these claims.

### A

### DEFAMATION

Plaintiff contends that defendants defamed him

when they gave the news media a memorandum that listed the discipline that had been imposed on him. Plaintiff bases this defamation claim on his contention that the charges against him were false. However, the arbitrator sustained the charges against plaintiff and the memorandum at issue listed only the charges that had been sustained. In other words, the truth of the memorandum had been established. Because truth is an absolute defense to a defamation claim, *Rouch v Enquirer & News of Battle Creek*, 427 Mich 157, 173-174; 398 NW2d 245 (1986); *Cochrane v Wittbold*, 359 Mich 402, 409; 102 NW2d 459 (1960); *Postill v Booth Newspapers, Inc*, 118 Mich App 608, 618; 325 NW2d 511 (1982), citing Restatement Torts, 2d, § 558, and plaintiff is estopped from contesting the arbitrator's final ruling that the charges against plaintiff had been sustained, *Gates, supra* at 154; *Fulgum, supra* at 377, the circuit court correctly dismissed count one of plaintiff's complaint.

B

## FALSE LIGHT INVASION OF PRIVACY

Similarly, the circuit court properly dismissed plaintiff's claim of "false light" invasion of privacy on the basis of collateral estoppel. As this Court held in *Duran v Detroit News*, 200 Mich App 622, 631-632; 504 NW2d 715 (1993):

In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attribut-

ing to the plaintiff characteristics, conduct, or
beliefs that were false and placed the plaintiff in a
false position.

See also *Morganroth, supra* at 792-793. In accor-
dance with this standard, this cause of action
cannot succeed if the contested statements are.
true. *Morganroth, supra* at 793-794. Here, plaintiff
alleges only that defendants gave the media a
memorandum that listed the charges against him.
Because we have already determined that the
truth of the memorandum cannot now be con-
tested, plaintiff is unable to show that defendants
portrayed him in a false light. Therefore, sum-
mary disposition of plaintiff's false light claim was
properly granted in defendants' favor. To the ex-
tent that plaintiff contends that the media's use of
this information caused a false public impression
that he caused Heaps' death, we note that defen-
dants cannot be held liable for the characteriza-
tion of truthful information by the media.

## C

### PUBLIC POLICY

Plaintiff is also collaterally estopped from con-
tending that the discipline imposed on him was a
violation of public policy. The crux of plaintiff's
argument in this regard suggests that he was
disciplined for refusing to enter Heaps' house ille-
gally. However, contrary to plaintiff's argument on
appeal, this issue was clearly raised and resolved
in the prior proceeding. In fact, in the prior case
both this Court and the circuit court specifically
addressed the same public policy argument that

plaintiff now asserts.[6] Accordingly, plaintiff is collaterally estopped from relitigating this issue. *Gates, supra* at 154; *Bullock, supra* at 556.

## IV

Next, plaintiff contends that the circuit court erred in dismissing his claim that, by informing reporters of the discipline imposed on him, defendants tortiously invaded his privacy by disclosing embarrassing private facts. We disagree and conclude that although the circuit court erred in premising summary disposition on the ground that the information was true, there is no error requiring reversal because summary disposition was the correct result. *In re Powers,* 208 Mich App 582, 591; 528 NW2d 799 (1995); *Paul v Bogle,* 193 Mich App 479, 492; 484 NW2d 728 (1992).

In *Duran, supra* at 631, this Court described the

---

[6] In addressing this argument in plaintiff's prior appeal, this Court held:

> Plaintiff claims that the arbitration award violates public policy because, in effect, he was being punished for failing to gain entry to Heaps' house. Plaintiff claims that such an entry would have been illegal. This Court may refuse to enforce the present arbitration award if it is contrary to public policy. *Lincoln* [*Park v Lincoln Park Police Officers Ass'n,* 176 Mich App 1, 6-7; 438 NW2d 875 (1989)]. However, the public policy invoked must be well-defined and dominant, one ascertained by reference to laws and legal precedents rather than from general considerations of supposed public interests. *Lincoln, supra.* Contrary to plaintiff's argument, he was not charged with refusing to gain "illegal entry" to Heaps' home. Instead, among many other violations, plaintiff was charged with failing "to cause an investigation" of a reported gunshot and a possible drug overdose. Plaintiff has not, and can not demonstrate a well-defined and dominant public policy against investigating a gunshot or a drug overdose. Sufficient [sic] to say, the trial court did not err in finding no violation of public policy. *DAIIE v Gavin,* 416 Mich 407, 441; 331 NW2d 418 (1982).

The circuit court in the prior proceeding articulated similar findings in its written affirmation of the arbitrator's award.

tort of invasion of privacy by public disclosure of private facts as follows:

> A cause of action for public disclosure of private facts requires the disclosure of information that would be highly offensive to a reasonable person *and* of *no legitimate concern to the public,* and the information disclosed must be of a private nature that excludes matters already of public record or otherwise open to the public eye. [Emphasis added.]

See also *Doe v Mills,* 212 Mich App 73; 536 NW2d 824 (1995); *Winstead v Sweeney,* 205 Mich App 664, 668; 517 NW2d 874 (1994); *Ledsinger v Burmeister,* 114 Mich App 12, 24; 318 NW2d 558 (1982); *Fry v Ionia Sentinel-Standard,* 101 Mich App 725, 728; 300 NW2d 687 (1980). In *Winstead, supra,* a panel of this Court explained some of the topics that are of legitimate interest to the public:

> Included within the scope of legitimate public concern are matters of the kind customarily regarded as "news." To a considerable extent, in accordance with the mores of the community, the publishers and broadcasters have themselves defined the term, as a glance at any morning paper will confirm. Authorized publicity includes publications concerning homicide and other crimes, arrests, police raids, suicides, marriages and divorces, accidents, fires, catastrophes of nature, a death from the use of narcotics, a rare disease, the birth of a child to a twelve-year-old girl, the reappearance of one supposed to have been murdered years ago, a report to the police concerning the escape of a wild animal and many other similar matters of genuine, even if more or less deplorable, popular appeal. [*Winstead, supra* at 669, quoting 3 Restatement Torts, 2d, § 652D, comment g, pp 390-391.]

See generally *Virgil v Time, Inc,* 527 F2d 1122,

1130 (CA 9, 1975); *Cassidy v American Broadcasting Cos, Inc,* 60 Ill App 3d 831, 839; 17 Ill Dec 936; 377 NE2d 126 (1978); *Buzinski v DoAll Co,* 31 Ill App 2d 191, 195; 175 NE2d 577 (1961); 57 ALR4th 520, §§ 10, 11, pp 572-602. If the facts that were disclosed were "private," and therefore outside the legitimate interest of the public, this cause of action may be maintained even if the material that is disclosed is truthful. *Winstead, supra* at 669, citing 3 Restatement Torts, 2d, § 652D.

After applying this standard, we conclude that although the circuit court erred in premising summary disposition on the ground that the information was true, summary disposition was nevertheless appropriate because the topic of the material at issue was of legitimate interest to the public and therefore not "private."

The work performed by police officers is intricately connected to the important, pervasive, and sometimes volatile topic of public safety and is one of the most primary functions of local government. Indeed, as stated by the Arizona Supreme Court, "[i]t is difficult to conceive of an area of greater public interest than law enforcement. Certainly the public has a legitimate interest in the manner in which law enforcement officers perform their duties." *Godbehere v Phoenix Newspapers, Inc,* 162 Ariz 335, 343; 783 P2d 781 (1989). Here, the information that defendants disclosed concerned the discipline that was imposed on a supervisory police officer who refused to dispatch public safety officers in his command to investigate a reported gunshot despite impassioned pleas for police assistance. Under these circumstances, we conclude that information regarding the present situation was clearly within the legitimate public concern. See generally 30 ALR3d 203, § 8(a), pp 222-233. In our view, it is distinguishable from those more

personal situations where this Court has found it improper to rule as a matter of law. See, e.g., *Doe, supra* (naming plaintiffs on placards as they were having abortions); *Winstead, supra* (naming plaintiffs in a news article as having had several abortions and being involved in surrogate parenting and partner swapping).

Therefore, we hold, as a matter of law, that the material disclosed by defendants concerned a subject about which the public has a legitimate interest. Accordingly, the lower court properly granted summary disposition in favor of defendants of plaintiff's claim that defendants invaded his privacy by publicly disclosing private facts.[7]

In view of our disposition, we need not address the issue of governmental immunity.

Affirmed.

M. E. CLEMENTS, J., concurred.

JANSEN, J. *(concurring in part and dissenting in part)*. I respectfully dissent from part IV of the majority opinion regarding plaintiff's claim of invasion of privacy by public disclosure of private facts. I would hold that whether the material at issue was in the legitimate interest of the public is a factual issue for the jury to resolve and should not be decided as a matter of law.

The trial court erred in granting summary disposition on the basis that the information disseminated to the media was true. This is not an element of the claim of public disclosure of private

---

[7] On the basis of our conclusion that the discipline imposed on plaintiff was a matter within the public interest, we decline defendants' invitation to decide whether a police officer is among those "public officials" so immersed in the public interest that an invasion of privacy action could only lie if plaintiff shows actual malice. See *Godbehere, supra* at 343; *Rawlins v Hutchinson Publishing Co,* 218 Kan 295, 299-301; 543 P2d 988 (1975).

facts. See *Beaumont v Brown,* 401 Mich 80, 93-103; 257 NW2d 522 (1977); *Winstead v Sweeney,* 205 Mich App 664, 668; 517 NW2d 874 (1994). However, I do not agree with the majority that summary disposition is appropriate because the material disclosed was of legitimate interest to the public and was, therefore, not private as a matter of law. I believe that whether the material disclosed was of legitimate interest to the public is a factual question for the jury.

In order to sustain a claim for public disclosure of private facts, a plaintiff must show that the disclosed information is highly offensive to a reasonable person and that the information is of no legitimate concern to the public. *Winstead, supra,* p 668. The information published must concern the individual's private life and must not have been a matter of public record or otherwise exposed to the public eye. *Id.*

Here, plaintiff had both a contractual and a statutory expectation that his internal disciplinary record would not be disclosed to the public. The collective bargaining agreement in effect at the time provided that an "employee's files shall not be made available to any person or organization other than the employer and the employee without the employee's expressed authorization." Further, the Employee Right to Know Act provides that an employer shall not divulge a disciplinary report to a third party (who is not part of the employer's organization or who is not part of the labor organization representing the employee) without written notice as provided in the statute. MCL 423.506; MSA 17.62(6).[1] Therefore, plaintiff had a reason-

---

[1] The majority states that I have "erroneously assume[d]" that defendants violated the Employee Right to Know Act and the collective bargaining agreement. Not so. Rather, I believe that the statute and the contract gave plaintiff a reasonable expectation that his

able expectation that his disciplinary record would
not be divulged to the public.

The majority overstates that law enforcement is
of legitimate interest to the public and overlooks
the fact that plaintiff had a statutory and contrac-
tual expectation not to have his disciplinary record
exposed to the public. In *Winstead, supra,* p 674,
this Court quoted approvingly from *Virgil v Time,
Inc,* 527 F2d 1122, 1131 (CA 9, 1975):

> The fact that [persons] engage in an activity in
> which the public can be said to have a general
> interest does not render every aspect of their lives
> subject to public disclosure. Most persons are con-
> nected with some activity, vocational or avoca-
> tional, as to which the public can be said as a
> matter of law to have a legitimate interest or
> curiosity. To hold as a matter of law that private
> facts as to such persons are also within the area of
> legitimate public interest could indirectly expose
> everyone's private life to public view.

Accordingly, I believe that plaintiff has pre-
sented sufficient evidence establishing a claim of
public disclosure of private facts to withstand
summary disposition. Plaintiff has set forth evi-
dence that his disciplinary record was disclosed to
the media and then broadcast through the media.
Further, whether the public disclosure involves
embarrassing private facts is a question of fact for
the jury. *Beaumont, supra,* p 106; *Doe v Mills,* 212
Mich App 73, 81; 536 NW2d 824 (1995). Plaintiff
has presented evidence that his actions during the

---

internal disciplinary record would not be disclosed to the public, and
that whether the material disclosed is in the legitimate interest of the
public is a factual question that cannot be decided as a matter of law.
I further note that the trial court did not grant defendants summary
disposition with respect to plaintiff's claim under the Employee Right
to Know Act and that the parties eventually settled that claim. In
any event, the language in the statute and in the collective bargain-
ing agreement speaks for itself.

Heaps incident was broadcast in a manner to embarrass and humiliate him. *Doe, supra*, p 82. Finally, where plaintiff had a statutory and contractual expectation not to have the disciplinary record revealed to anyone other than his union and his employer, there is a factual issue for the jury to resolve regarding whether the information disclosed was of legitimate interest to the public.

I would reverse the trial court's order granting summary disposition in defendants' favor regarding the public disclosure of private facts claim. Because the trial court did not address the governmental immunity claim by defendants, I would leave the question whether plaintiff has pleaded facts in avoidance of governmental immunity for the parties to resolve on remand.

With respect to the remaining aspects of the majority's opinion, I concur.