# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIE SMITH,

    Plaintiff-Appellant,

v

AUTOMOBILE CLUB INSURANCE
ASSOCIATION OF AMERICA,

    Defendant-Appellee.

UNPUBLISHED
July 19, 2018

No. 337924
Wayne Circuit Court
LC No. 15-015088-NF

Before: FORT HOOD, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals as of right from the trial court's order granting summary disposition in favor of defendant in this first-party no-fault case. We reverse and remand for proceedings consistent with this opinion.

Plaintiff first argues that the trial court erred in granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10) where defendant's allegations that plaintiff engaged in fraud were barred by the doctrines of res judicata and collateral estoppel. We disagree.

This Court will review the trial court's decision regarding a motion for summary disposition de novo. *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 777; 910 NW2d 666 (2017). Where defendant moved for summary disposition pursuant to MCR 2.116(C)(10):

> A motion under this court rule tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, and admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. The motion is properly granted "if there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. [*Candler*, 321 Mich App at 777 (quotation marks and citations omitted).]

Whether res judicata operates to bar a subsequent action is a question of law that this Court will review de novo. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999). Whether the doctrine of collateral estoppel will apply to preclude a party

-1-

from raising an issue raised in a prior proceeding is also a question of law reviewed de novo. *Horn v Dep't of Corrections*, 216 Mich App 58, 62; 548 NW2d 660 (1996).[1]

In *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745 (2016), this Court addressed the elements that must be met for the doctrines of res judicata and collateral estoppel to apply:

> The preclusion doctrines of res judicata and collateral estoppel "serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *Nummer v Dep't of Treasury*, 448 Mich 534, 541; 533 NW2d 250 (1995). Res judicata applies if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). "Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks, citation, and brackets omitted).

The only document that is part of the lower court record that gives any indication that the parties were involved in litigation before the case leading to this appeal is a copy of the March 8, 2011 opinion and judgment of Judge Deborah Lewis Langston of the 36th District Court in Case No. 06-160578-GC, filed in support of plaintiff's supplemental response opposing defendant's motion for summary disposition. However, as defendant notes in its brief on appeal, this matter appears to have been the subject of at least two separate cases between the same parties in the 36th District Court, one of which was settled in November 2006 in case number 05-129583 and another case in case number 06-160578-GC which resulted in the March 8, 2011 written opinion and judgment in favor of plaintiff. Judge Lewis Langston's written opinion and judgment reflects that a bench trial was held, and that judgment was entered in plaintiff's favor in the amount of $25,000.

---

[1] For an issue to be preserved for appellate review, it must be raised before, and decided by, the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). While plaintiff raised its arguments regarding the applicability of the doctrines of res judicata and collateral estoppel in the trial court, the trial court did not expressly rule on these issues, rendering them unpreserved. *Id*. However, this Court may consider and decide an otherwise unpreserved issue if the question presented is one of law, and the necessary facts for the Court to resolve the issue have been presented. *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

In her March 8, 2011 written ruling, Judge Lewis Langston noted that plaintiff had been "100 percent disabled by his former employer, Chrysler Corporation, in 1987," which took place before his November 2, 2004 motor vehicle accident. Judge Lewis Langston, after hearing testimony from two different physicians, Dr. Michael Taylor and Dr. James Beale, concluded that plaintiff's 2004 motor vehicle accident "aggravated an existing condition," and that as a result, plaintiff needed additional medical and attendant care. As relevant to this appeal, Judge Lewis Langston concluded that defendant was responsible for attendant care expenses that plaintiff had incurred as early as 2008, observing that before the November 1, 2004 motor vehicle accident, plaintiff had been able to care for his own needs, as well as those of his wife, who has Alzheimer's disease. However, since the accident, plaintiff could no longer care for his wife and she had to go live with another relative, and plaintiff could not tend to his own needs. Referencing the November 13, 2006 settlement agreement, Judge Lewis Langston stated that it "explicitly leaves open the possibility of claims for future medical and attendant care." Judge Lewis Langston also concluded that "the insurance company unduly and unreasonably delayed paying the caregivers [for plaintiff's attendant care]" where defendant did not process plaintiff's claim for attendant care benefits where the claim was in litigation.

After the Wayne Circuit Court affirmed Judge Lewis Langston's opinion and order in an order entered December 12, 2012, defendant appealed to this Court, and this Court reversed the Wayne Circuit Court's order affirming the district court's opinion and judgment on the following grounds:

> In lieu of granting the application [for leave to appeal], the Court orders, pursuant to MCR 7.205(E)(2), that the December 12, 2012 order of the Wayne Circuit Court affirming the district court's judgment in favor of plaintiff is REVERSED. Pursuant to *Moody v Get Well Medical Treatment*, ___ Mich App ___ (Docket Nos. 301783, 301784; issued February 25, 2014), a district court presiding over an action where a plaintiff has patently claimed damages above the $25,000 amount-in-controversy limit of the court's jurisdiction should either dismiss the case as outside its subject matter jurisdiction or transfer it to the circuit court. The circuit court thus should have vacated the district court's judgment. The case is REMANDED to the district court for it to enter an order either dismissing the case as outside its subject matter jurisdiction or transferring it to the circuit court in light of *Moody*. [*Smith v AAA of Mich Ins*, unpublished order of the Court of Appeals, entered March 11, 2014 (Docket No. 313931).]

The 36th District Court subsequently entered an order transferring the case to the Wayne Circuit Court on May 14, 2014. The 36th District Court entered an order dismissing the case on August 26, 2014. In an order entered April 13, 2015 in the Wayne Circuit Court under Case No. 14-014774-AV, the Wayne Circuit Court denied plaintiff's application for leave to appeal "for lack of merit on the issues presented." Plaintiff's application for leave to appeal in the Wayne Circuit Court sought review of the district court's orders transferring the case to the Wayne Circuit Court and dismissing the case. This Court subsequently denied plaintiff's application for leave to appeal the Wayne Circuit Court's order. *Smith v AAA of Mich Ins*, unpublished order of the Court of Appeals, issued October 2, 2015 (Docket No. 327173).

While plaintiff relies on the doctrine of collateral estoppel to support his argument that defendant is precluded from asserting that plaintiff committed fraud in applying for no-fault benefits in his November 13, 2004 application, this doctrine would not be applicable under the facts of this case, given that there is no indication from the record that the issue of plaintiff's alleged fraud was already litigated and decided by the trial court in the earlier lawsuit. "Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the *issue was actually and necessarily determined in the prior proceeding.*" *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995) (emphasis added). Accordingly, plaintiff's argument that collateral estoppel operates to bar defendant's claim that plaintiff acted fraudulently is not persuasive.

Turning next to plaintiff's assertion that defendant's allegations of fraud against him are barred by the doctrine of res judicata, even assuming that plaintiff has met the initial requirements of this doctrine, that being that a prior action was decided on the merits,[2] and that the cases involved the same parties, *William Beaumont Hosp*, 315 Mich App at 398, the existing record simply is not sufficient for us to definitively conclude whether or not defendant even raised the issue of fraud in any prior proceedings between plaintiff and defendant. Put simply, defendant may have raised issues regarding plaintiff's alleged fraud with respect to completing the 2004 application for no-fault benefits, or may not have, but without additional information regarding the prior proceedings between plaintiff and defendant, it is not possible for us to decipher what transpired. There is simply no factual basis on which we can confidently conclude whether any issues of alleged fraud on plaintiff's part were, or could have been, resolved in any litigation preceding the instant case. *Id*. Notably, aside from the March 8, 2011 opinion and judgment of Judge Lewis Langston plaintiff attached to his supplemental response opposing defendant's motion for summary disposition, the lower court file does not contain any information regarding the prior litigation between the parties. Therefore, under the circumstances of this case, plaintiff's argument that defendant's allegations of fraud are precluded by the doctrines of collateral estoppel and res judicata is unavailing.

Plaintiff next argues that the trial court erred in granting summary disposition in favor of defendant where genuine issues of material fact existed with regard to whether plaintiff committed fraud. We agree.

In the trial court and in this Court, defendant claims that plaintiff is barred from receiving no-fault benefits because he has violated the terms of the fraud-exclusion clause of the no-fault policy. Notably, defendant did not produce a copy of the no-fault policy in the trial court, and a copy has also not been provided to this Court as an exhibit. The fact that defendant has not provided a copy of the no-fault policy, particularly the alleged fraud-exclusion clause, is

---

[2] In support of his claim that the prior action was determined on the merits, plaintiff points to litigation, presumably commenced in the 36th District Court in 2005, noting that it was settled, and that a voluntary order of dismissal was entered. However, our review of the lower court record in this case did not yield a copy of the voluntary order of dismissal that plaintiff refers to.

problematic, particularly where this Court has recently recognized that "[r]eliance on an exclusionary clause in an insurance policy is an affirmative defense; therefore, [the] defendant [relying on the clause] has the burden of proof." *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017).

> An "insurance company has the burden to prove that one of the policy's exclusions applies." *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015). Thus, to obtain summary disposition the insurer must show that there is no question of material fact as to any of the elements of its affirmative defense. MCR 2.116(C)(10). [*Shelton*, 318 Mich App at 657.]

In this case, where defendant has failed to produce a copy of the no-fault policy, and we are left without sufficient information to discern the exact wording of the no-fault policy's fraud-exclusion clause, as well as other pertinent provisions of the no-fault policy, the absence of the policy itself creates factual disputes with respect to whether the policy does in fact bar coverage or benefits on the basis of fraudulent statements or conduct. However, even if we were to overlook this omission, genuine issues of material fact nonetheless exist concerning whether plaintiff engaged in fraud.

Recently, in *Meemic Ins Co v Fortson*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337728); slip op at 2, this Court restated the legal principle that "[g]enerally, whether an insured has committed fraud is a question of fact for a jury to determine." While a trial court, in certain scenarios, may determine as a matter of law whether an insured engaged in fraud, *id.*, the following elements must be established to support a claim of fraud:

> In order to establish that an individual committed fraud, the insurer must establish (1) that the individual made a material misrepresentation, (2) that the representation was false, (3) that when the individual made the representation he or she knew it was false or made it with reckless disregard as to whether it was true or false, (4) that the misrepresentation was made with the intention that the insurer would act upon it, and (5) that the insurer acted on the misrepresentation to its detriment. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). [*Meemic*, ___ Mich App at ___; slip op at 2.]

In *Meemic*, the defendants' son, Justin Fortson, was seriously injured after riding on the hood of a motor vehicle. *Id.*; slip op at 1. The defendants submitted claims to the plaintiff insurance company, claiming that they provided around-the-clock attendant care for Justin for the time period of 2009 until 2015. *Id.* After routinely paying for the attendant care, the plaintiff insurance company initiated an investigation which confirmed that during the relevant time period, Justin had been jailed periodically for drug and traffic offenses, spent time at an in-patient substance abuse treatment program, and spent time with his girlfriend outside the home smoking marijuana. *Id.*; slip op at 2. After concluding that the defendants had committed fraud, the plaintiff insurance company terminated Justin's no-fault benefits, and initiated a lawsuit against the defendants, claiming that their receipt of attendant care payments was fraudulent. *Id.* In *Meemic*, where the defendants did not dispute that they knew Justin was incarcerated and spent time at an inpatient drug rehabilitation facility, but nevertheless submitted payment requests to the insurance company for around-the-clock attendant care, this Court held that such

action "constituted a material misrepresentation." *Id*.; slip op at 3. This Court also concluded that the defendants submitted the payment requests intending that the plaintiff insurance company would rely on them, and render payment to the defendants for attendant care services, even where the defendants knew that they were not providing around-the-clock care for their son. *Id*.

Similarly, in *Bahri v IDS Property & Casualty Ins Co*, 308 Mich App 420, 425; 864 NW2d 609 (2014), this Court agreed with the trial court's determination in that case that the fraud exclusion in the applicable no-fault policy applied to bar coverage for the plaintiff.[3] In *Bahri*, the plaintiff had presented a statement reflecting that attendant care services were provided from October 1, 2011 to February 29, 2012, but the accident giving rise to her need for attendant care services did not in fact take place until October 20, 2011. *Id*. The defendant insurance company also had surveilled the plaintiff and observed her engaging in activities that were "inconsistent with her claimed limitations." *Id*. Where "reasonable minds could not differ in light of [the] clear evidence that [the] plaintiff made fraudulent representations" in order to recover no-fault benefits, this Court concluded that the trial court properly granted summary disposition in favor of the defendant insurance company. *Id*. at 426.

In the instant case, a review of the record reflects that genuine issues of material fact exist with respect to whether plaintiff engaged in fraud to the extent that the alleged fraud-exclusion clause could even be said to apply. For example, while the parties do not appear to seriously dispute[4] that Evette Lamb exaggerated her attendant care claims, namely by failing to specify in the attendant care documentation the days that she was actually out of town and not personally caring for plaintiff, questions of fact exist with respect to whether (1) *plaintiff* made a false material misrepresentation, (2) with reckless disregard as to its truth or falsity, and (3) with an intention that defendant would rely on it. *Meemic*, ___ Mich App ___; slip op at 2. Specifically, Lamb testified that she alone completed the attendant care documentation, that plaintiff did not participate in the completion of the paperwork or review it, and that she submitted the paperwork directly to his counsel. Moreover, questions of fact exist concerning whether Lamb did in fact engage in fraud, where the attendant care documentation that Lamb completed contained a provision differentiating between whether attendant care was provided directly or indirectly, and Lamb testified during her deposition that even when she was out of town, she coordinated with members of plaintiff's family to make sure that plaintiff received appropriate attendant care services. Further, the record evidence does not support defendant's contention that plaintiff was in fact aware of how Lamb completed the attendant care documentation, particularly where his

---

[3] The no-fault policy in *Bahri* included a "general fraud exclusion," specifically stating that "We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." *Bahri*, 308 Mich App at 423-424.

[4] In his brief on appeal, plaintiff states that "while Ms. Lamb may have exaggerated how many days she had personally provided attendant care services, there is no evidence that Plaintiff himself committed any fraud with respect to his claim for attendant care benefits."

deposition testimony was consistent with Lamb's that she and plaintiff's family coordinated to make sure that he had the necessary attendant care.

The present case is thus distinguishable from a recent case of this Court, *Candler*, where this Court concluded that the plaintiff had committed "a fraudulent insurance act" as contemplated by MCL 500.3173a(2), where the record evidence demonstrated that "[the] plaintiff knew that the statement [at issue] contained false information, which concerned a fact or thing material to [the plaintiff's claim]." *Candler*, 321 Mich App at 781. Specifically, the plaintiff in *Candler* knew that calendars submitted in support of his claim for replacement services were incorrect, and his counsel conceded in the trial court that the plaintiff had forged the name of his brother, the individual who was to have provided to the services to the plaintiff, on the calendars. *Id*. Where the plaintiff had moved to another city to be with his girlfriend who provided the replacement services that the brother had previously provided, this Court held that "[n]o reasonable jury could conclude that plaintiff . . . was not aware that he was submitting false information that was material to his claim for no-fault benefits." *Id*. at 781-782. Conversely, in the case before this Court, there is no such clear record evidence confirming that plaintiff was clearly aware of Lamb's alleged fraud, or even how she had completed the attendant care documentation.

With regard to defendant's allegation that plaintiff committed fraud in completing his application for no-fault benefits in November 2004, the record also yields genuine issues of material fact on this point. Plaintiff stated on his November 13, 2004 application that he was suffering from back pain following the November 1, 2004 motor vehicle accident and denied receiving treatment for "the same or similar symptoms prior to [the motor vehicle] accident[.]" However, plaintiff did include the telephone number of Dr. Michael Taylor in the application when questioned, "if [the answer to the question regarding same or similar symptoms prior to the motor vehicle accident is] yes, list name, address & phone number of physician(s) providing treatment." While defendant produced evidence in support of its motion for summary disposition reflecting that plaintiff had been determined to be "totally disabled due to a neurological disorder" in 1997 so he would not have to report for jury duty, and that Dr. Shirley L. Dixon had treated him for back pain in 2000, there is nothing in the record to suggest that the symptoms related to, or the condition of plaintiff's back following, the November 1, 2004 motor vehicle accident were the same as what plaintiff was dealing with in the time period before the motor vehicle accident. Therefore, the record evidence does not support a conclusion that plaintiff made a material misrepresentation on his application for no-fault benefits, that any such misrepresentation was false, that plaintiff made the misrepresentation knowing it was false, or with reckless disregard as to its truth or falsity, and with the intention that defendant would rely on it. *Meemic*, ___ Mich App at ___; slip op at 2. Accordingly, on this record, the trial court erred in concluding that genuine issues of material fact did not exist with respect to plaintiff's alleged fraud.

We reverse the trial court's order granting summary disposition in favor of defendant and remand for further proceedings consistent with this opinion.

We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.



/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Jane M. Beckering