DURAN v THE DETROIT NEWS, INC

DURAN v MATHEWS

Docket Nos. 137254, 137325. Submitted March 11, 1993, at Detroit. Decided July 19, 1993, at 9:20 A.M. Leave to appeal sought.

Consuelo Sanchez Duran and Augusto Sanabria brought two actions in the Wayne Circuit Court, one against The Detroit News, Inc., and two of its employees, and the other against Lori Matthews, a reporter for the Detroit Free Press, and other members of the media, after articles in The Detroit News and the Detroit Free Press and television news broadcasts reported that Sanchez Duran, the Colombian Consul in Detroit, had been a magistrate in Colombia, had fled to Detroit under the protection of the United States Department of State after receiving a death threat from a major narcotics trafficker she had indicted for murder, and that she was currently residing at the Riverview Apartments in Detroit. In the first action, the plaintiffs alleged claims of defamation, invasion of privacy by public disclosure of embarrassing private facts, false-light invasion of privacy, intentional and negligent infliction of emotional distress, and reckless endangerment. In the second action, the plaintiffs alleged invasion of privacy, reckless endangerment, and intentional and negligent infliction of emotional distress. The court, Edward M. Thomas, J., granted summary disposition for the defendants. The plaintiffs appealed.

The Court of Appeals *held:*

1. The trial court correctly determined that the plaintiffs failed to state a claim of negligent infliction of emotional distress. That tort is limited to cases where a plaintiff witnesses

REFERENCES

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 1, 3, 4, 5, 7; Libel and Slander §§ 3, 180; Privacy §§ 48, 91, 103, 106, 124, 134.

False light invasion of privacy, cognizability and elements. 57 ALR4th 22.

Modern status of intentional infliction of mental distress as independent tort; "outrage." 38 ALR4th 998.

Right to recover damages in negligence for fear of injury to another, or shock or mental anguish at witnessing such injury. 29 ALR3d 1337.

negligent injury to a third person and suffers mental disturbance as a result. The tort is inapplicable in this case, where the plaintiffs claim to have been injured by publication of false statements about them.

2. The trial court properly concluded that the plaintiffs failed to state a claim of intentional infliction of emotional distress in the absence of extreme or outrageous conduct by the defendants.

3. The trial court did not err in ruling that there existed no genuine issue of material fact with respect to the claim of intrusion upon seclusion, thus entitling the defendants to a judgment as a matter of law, because the obtaining of information about the plaintiffs in no way intruded upon their seclusion.

4. The trial court correctly concluded that there existed no genuine issue of material fact with respect to the claim of invasion of privacy for public disclosure of embarrassing private facts and that the defendants therefore were entitled to judgment as a matter of law. Information about Sanchez Duran's judicial position and her indictment of a major drug lord was a matter of public record, and her Detroit address was of legitimate concern to the public in light of the danger posed to her neighbors.

5. The trial court did not err in ruling that the plaintiffs failed to state a claim of false-light invasion of privacy. The information reported by the defendants neither attributed false characteristics to the plaintiffs nor placed them in a false position.

6. Reckless endangerment is not recognized as a tort in Michigan. The trial court properly dismissed the claims of reckless endangerment.

7. The trial court properly ruled that the plaintiffs failed to state a claim of defamation. Statements that the plaintiffs hid, fled, and escaped from Colombia after their lives were threatened were neither false nor defamatory.

Affirmed.

1. Torts — Negligent Infliction of Emotional Distress.

The tort of negligent infliction of emotional distress occurs only where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result.

2. Torts — Intentional Infliction of Emotional Distress.

Intentional infliction of emotional distress requires proof of extreme and outrageous conduct, intent or recklessness, causation, and severe emotional distress.

3. Privacy — Invasion of Privacy — Intrusion Upon Seclusion.

> Intrusion upon seclusion requires proof of an intrusion by the defendant into a matter that the plaintiff has a right to keep private and proof that the method of intrusion is objectionable to a reasonable person.

4. Privacy — Invasion of Privacy — Public Disclosure of Private Facts.

> A claim of invasion of privacy may be brought for the public disclosure of embarrassing private facts about the plaintiff; such an invasion requires the disclosure of private information that would be highly offensive to a reasonable person and of no legitimate concern to the public; liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public eye.

5. Privacy — Invasion of Privacy — False Light.

> False-light invasion of privacy is publicity that places a person in a false light in the public eye; an action alleging false-light invasion of privacy requires allegations that the objectionable communication was broadcast to the public in general or to a large number of people.

6. Libel and Slander — Libel.

> Libel requires proof of a false and defamatory statement concerning the plaintiff, an unprivileged communication to a third party, fault amounting to at least negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

7. Libel and Slander — Newspaper Articles — Substantial Truth.

> A claim of libel based on a newspaper article is predicated on whether the article was substantially true; liability should not be imposed for slight inaccuracies; rather, the sting of the article and its effect on the reader should be examined; if the literal truth would produce the same effect, minor differences are immaterial.

*Thurswell, Chayet & Weiner* (by *Cyril V. Weiner*), for Consuelo Sanchez Duran and Augusto Sanabria.

*Butzel Long* (by *James E. Stewart* and *Leonard*

*M. Niehoff*), for The Detroit News, Inc., Pete Wald-meir, and Robert H. Giles.

*Honigman Miller Schwartz & Cohn* (by *Herschel P. Fink*), for Lori Mathews, the Detroit Free Press, and Channel 7 of Detroit, Inc.

Before: GRIBBS, P.J., and HOLBROOK, JR., and NEFF, JJ.

HOLBROOK, JR., J. Plaintiffs appeal as of right two Wayne Circuit Court orders dated January 16, 1991, granting summary disposition to all defendants. We affirm.

I

Plaintiff Consuelo Sanchez Duran became a judge in Colombia in 1980. In the course of her judicial duties she indicted Pablo Escobar, a reputed drug lord, for the murder of Guillermo Cano, a Colombian newspaper editor. Several threats were made against Sanchez Duran and her family, some of which were reported in Colombian and American newspapers. Sanchez Duran resigned from the bench on August 30, 1988. A Colombian newspaper announced that she was leaving the country but did not reveal her destination. On September 1, 1988, Sanchez Duran and her husband, plaintiff Augusto Sanabria, left Colombia for the United States.

While in the United States, plaintiffs used their real names. Sanchez Duran was appointed Colombian Consul in Detroit. Other consulates were informed by mail of Sanchez Duran's appointment. As a normal business practice, Sanchez Duran would give people her business card inscribed with her name when she thought it was necessary.

Plaintiffs signed a lease in their own names for

an apartment in Southfield. Other residents of the apartment complex knew Sanchez Duran had been a magistrate threatened by a drug cartel. Sanchez Duran regularly went to work at the consulate in Detroit. She also shopped at public stores and dined in public restaurants. On the other hand, plaintiffs kept an unlisted telephone number, did not join any social clubs or organizations, and did not attend any concerts, sporting events, or motion pictures. The United States Department of State initially hired security guards for the plaintiffs. On February 9, 1989, plaintiffs moved to a different apartment in Detroit, again using their real names.

On February 12, 1989, The Detroit News published an article written by Pete Waldmeir that exposed Sanchez Duran's history and her presence in Detroit. The next day the newspaper published a second article written by Waldmeir that stated that plaintiffs had moved into a Detroit riverfront apartment. That evening, Channel 7 of Detroit, Inc., doing business as WXYZ TV, broadcast a report concerning plaintiffs with a reporter standing in front of plaintiffs' apartment complex and interviewing one of the residents. On February 14, 1989, the Detroit Free Press published an article by Lori Mathews that specified the Riverfront Apartments as plaintiffs' residence. The following day Gillett Communications of Detroit, Inc., doing business as WJBK-TV, broadcast a story about plaintiffs that again revealed the Riverfront Apartments as plaintiffs' residence. WXYZ also broadcast an interview with Waldmeir.

II

Plaintiffs filed two suits. In their complaints against The Detroit News, its publisher Robert H.

Giles, and Waldmeir (collectively the News defendants), plaintiffs alleged actions for defamation, invasion of privacy by public disclosure of embarrassing private facts, false-light invasion of privacy, intentional and negligent infliction of emotional distress, and reckless endangerment. In their complaint against Mathews, the Detroit Free Press, WXYZ, and WJBK, plaintiffs alleged invasion of privacy, reckless endangerment, and intentional and negligent infliction of emotional distress. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10).

The trial court first considered the motion brought by the News defendants. Finding as a matter of law that the words reported were not capable of a defamatory meaning, the trial court granted these defendants summary disposition under MCR 2.116(C)(8) with respect to the claim of defamation. The trial court further ruled that Sanchez Duran was a public figure, the statements were not false, and actual malice was totally absent. The trial court granted the News defendants summary disposition of the claims of invasion of privacy on the grounds that there was no genuine issue of material fact because the reports did not cast plaintiffs in a false light, were not embarrassing to plaintiffs, and were not intrusive upon plaintiffs' seclusion because defendants "never forced their way into her private areas of employment or domicile." In granting the News defendants summary disposition under MCR 2.116(C)(8) with respect to the claims of intentional and negligent infliction of emotional distress, the trial court determined that defendants' actions as news reporters could "hardly be classified as outrageous." The trial court found that this state does not recognize a cause of action for reckless endangerment and thus dismissed the claim. The trial court

then ruled that its analysis was applicable to the respective claims against Mathews, the Detroit Free Press, WXYZ, and WJBK. Plaintiffs now appeal the trial court's orders.[1]

III

A motion under MCR 2.116(C)(8), for summary disposition based upon a failure to state a claim upon which relief can be granted, tests the legal sufficiency of a claim by the pleadings alone. *Wolfe v Employers Health Ins Co (On Remand),* 194 Mich App 172, 174; 486 NW2d 319 (1992). The court must accept as true all well-pleaded factual allegations as well as any conclusions that can be drawn from the facts. *Paul v Bogle,* 193 Mich App 479, 495; 484 NW2d 728 (1992). The motion should be granted only if the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. *Hutchinson v Allegan Co Bd of Rd Comm'rs (On Remand),* 192 Mich App 472, 475; 481 NW2d 807 (1992).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim and should be granted only when it is impossible for the claim to be supported at trial because of a deficiency that cannot be overcome. *Holland v Liedel,* 197 Mich App 60, 64; 494 NW2d 772 (1992). In deciding such a motion, the court must give the benefit of reasonable doubt to the nonmovant and determine whether a record might be developed that would leave open an issue upon which reasonable minds could differ. *Bedker v Domino's Pizza, Inc,* 195 Mich App 725, 728; 491 NW2d 275 (1992). This Court liberally finds a genuine issue of mate-

---

[1] The clerk of this Court dismissed plaintiffs' appeal with respect to WJBK under MCR 7.218 in an order dated October 2, 1991.

rial fact. However, where the opposing party fails to adduce evidence to establish a material factual dispute, the motion is properly granted. *Mascarenas v Union Carbide Corp,* 196 Mich App 240, 243; 492 NW2d 512 (1992).

IV

Plaintiffs first argue that the trial court erred in granting defendants summary disposition of the claims of negligent infliction of emotional distress. Citing *Parnell v Booth Newspapers, Inc,* 572 F Supp 909 (WD Mich, 1983), and *Apostle v Booth Newspapers, Inc,* 572 F Supp 897 (WD Mich, 1983), plaintiffs argue defendants' negligence and breach of journalism standards caused plaintiffs to suffer severe emotional distress by witnessing each other's distress. However, we find that the tort of negligent infliction of emotional distress is inapplicable where a plaintiff claims to have been injured by publication of false statements about the plaintiff. *Deitz v Wometco West Michigan TV, Inc,* 160 Mich App 367, 380-381; 407 NW2d 649 (1987). Although the circumstances in the present case concern substantially true statements about the plaintiffs, we decline to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result. *Id.; Wargelin v Mercy Health Corp,* 149 Mich App 75; 385 NW2d 732 (1986). Accordingly, the trial court did not err in granting defendants summary disposition of the claims of negligent infliction of emotional distress.

Plaintiffs next argue that the trial court erred in granting summary disposition of the claims of intentional infliction of emotional distress. The four elements of this tort are: (1) extreme and

outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 602; 374 NW2d 905 (1985). The trial court must determine as a matter of law whether the defendant's conduct was so extreme and outrageous to withstand a motion for summary disposition. *Id.; Sawabini v Desenberg,* 143 Mich App 373, 383; 372 NW2d 559 (1985). In this case, the statements were offensive to plaintiffs because they publicized plaintiffs' location in Detroit when there were death threats against them. However, defendants' conduct was not so outrageous or extreme to establish liability in tort in light of the fact that plaintiffs used their own names and did not attempt to completely hide their identities while in Detroit. Thus, the trial court did not err in granting defendants summary disposition of the claims of intentional infliction of emotional distress. See *Ross v Burns,* 612 F2d 271 (CA 6, 1980).

Next, we reject the plaintiffs' argument that the trial court erred in granting the News defendants' motion for summary disposition of the claim of intrusion upon seclusion. In order to establish an action for intrusion, a plaintiff must show: (1) an intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, (3) by the use of a method that is objectionable to the reasonable person. *Hall v Citizen Ins Co of America,* 141 Mich App 676, 685; 368 NW2d 250 (1985). Intrusion upon a person's seclusion or solitude is analogous to trespass, except that it is unnecessary to show physical invasion onto a person's property. *Id.* In this case, the trial court erred in requiring plaintiffs to show a physical invasion. Nevertheless, the claim is so clearly unenforceable as a matter of law because the News defendants' conduct in obtaining information from newspapers

and plaintiffs' guards in no way intruded upon plaintiffs' seclusion. Thus, the trial court did not err in dismissing this claim for the failure to state a claim upon which relief can be granted.

We further find that the trial court properly granted defendants' motion for summary disposition of plaintiffs' claim of public disclosure of private facts. A cause of action for public disclosure of private facts requires the disclosure of information that would be highly offensive to a reasonable person and of no legitimate concern to the public, and the information disclosed must be of a private nature that excludes matters already of public record or otherwise open to the public eye. *Ledsinger v Burmeister,* 114 Mich App 12, 24; 318 NW2d 558 (1982). Giving the benefit of reasonable doubt to plaintiffs, we find that the information revealed was not private because Sanchez Duran's conduct as a Colombian judge was a matter of public record that had been reported in both Colombian and domestic newspapers. Moreover, plaintiffs' identities in the United States were open to the public eye. Although disclosure of plaintiffs' residence could be deemed highly objectionable under the circumstances, the information was a legitimate concern to the public because the death threats to plaintiffs placed their neighbors in danger. We find no error.

Plaintiffs also argue that the trial court erred in granting the News defendants' motion for summary disposition with respect to the claim of false-light invasion of privacy. Plaintiffs contend that the articles falsely conveyed an impression of plaintiffs as cowards participating in a bungled security operation.

In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to

a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position. *Sawabini, supra* at 381. In this case, the articles accurately reported that plaintiffs left Colombia after Sanchez Duran received death threats. The articles also revealed the current security provided to plaintiffs by the government. Because the information in the articles neither attributed false characteristics to plaintiffs nor placed them in a false position, the trial court did not err in denying plaintiffs' claim for failure to state a claim upon which relief can be granted. See *Morganroth v Whitall,* 161 Mich App 785, 793-794; 411 NW2d 859 (1987).

Next, plaintiffs argue that the trial court improperly dismissed their claims of reckless endangerment. Plaintiffs concede that our state does not recognize a cause of action for reckless or negligent endangerment, but maintain that public policy mandates the recognition of such a claim. However, we are not convinced that we must recognize such a cause of action. The trial court did not err in granting defendants summary disposition of plaintiffs' claim of reckless or negligent endangerment because the claims are clearly unenforceable as a matter of law because no factual development could establish the claims and justify recovery. *Hutchinson, supra.*

Finally, plaintiffs contend that they were defamed by The Detroit News articles and the television interview of Waldmeir. Plaintiffs claim that Waldmeir's statements portrayed them as cowardly and falsely created an impression of imminent danger that caused others to shun them. Plaintiffs also assert that the statement concern-

ing a $1 million bounty on them was a sensational exaggeration.

In order to maintain a cause of action for libel, a plaintiff must show: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Roach v Enquirer & News of Battle Creek (After Remand),* 440 Mich 238, 251; 487 NW2d 205 (1992). In addition, a plaintiff must comply with the requirements concerning the public or private status of the plaintiff, the media or nonmedia status of the defendant, and the public or private character of the speech. *Id.* at 251-252. Where a claim of libel is based on a newspaper article, liability should not be imposed for slight inaccuracies. Rather, the court must examine the sting of the article and its effect on the reader. If the literal truth produced the same effect on the reader, minor differences are deemed immaterial. *Id.* at 258-260.

After reviewing the articles and television interview, we conclude that the statements were neither false nor defamatory. The gist of the statements was that Sanchez Duran was a judge who had indicted a drug lord, had left Colombia in secret after receiving death threats, and was receiving less than secret protection from guards. Plaintiffs claim that the articles' use of the words "hide," "fled," and "escape" portrayed them as cowards. However, these words accurately describe the circumstances surrounding plaintiffs' ordeal.[2]

---

[2] Plaintiffs cite *Webster's Ninth New Collegiate Dictionary* (1985) for the definition of the words "hide," "flee," and "escape." The 1983 edition of that dictionary provides the following definitions of those words:

Although the reported bounty was inaccurate, this minor difference is immaterial because Sanchez Duran's life had been threatened and the sting of the article was the exposure of Sanchez Duran. Summary disposition of plaintiffs' claim of defamation was proper because a record could not be developed that would leave open an issue upon which reasonable minds could differ. *Bedker, supra.*

Affirmed.

GRIBBS, P.J., concurred.

NEFF, J., concurred in the result only.

hide: "1 a: to put out of sight: SECRETE b: to conceal for shelter or protection: SHIELD 2: to deep secret . . . 2: to seek protection or evade responsibility . . . ."

flee: "1 a: to run away often from danger or evil: FLY b: to hurry toward a place of security . . . ."

escape: "1 a: to get away (as by flight) . . . ."