*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE RICHARD and PIERRE RICHARD,

Plaintiffs-Appellants,

v

MEIJER, INC,

Defendant-Appellee.

UNPUBLISHED
April 23, 2019

No. 342766
Oakland Circuit Court
LC No. 2016-154815-NO

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

In this slip-and-fall case, plaintiffs, Michelle and Pierre Richard,[1] appeal as of right the trial court order granting summary disposition to defendant, Meijer, Inc., under MCR 2.116(C)(10) (no genuine issue of material fact and the moving party is entitled to judgment as a matter of law). We affirm.

## I. BACKGROUND

In August 2014, plaintiffs visited defendant's store to purchase groceries. After Pierre paid for the groceries, Michelle pushed her shopping cart away from the cash register, as the couple prepared to leave the store. Plaintiffs allege that Michelle slipped and fell on water or clear liquid that was on the white tile floor in the main aisle between the cash registers and the guest-service counter. Plaintiffs alleged that the water was obscured by the color of the tile floor and the position of the shopping cart directly in front of Michelle. According to plaintiffs, Michelle suffered severe, permanent, and painful injuries as a result of the slip and fall.

Plaintiffs filed an original and amended complaint alleging four distinct causes of action: premises liability and negligence/gross negligence (on behalf of Michelle), and loss of

---

[1] Because both plaintiffs share the same last name, we refer to them by their first names throughout this opinion.

consortium and negligent infliction of emotional distress (on behalf of Pierre). Both the premises-liability and negligence/gross negligence counts employed language common to premises-liability claims. For example, the negligence/gross-negligence count alleged that "Meijer owed certain duties to the general public and its *business invitees*," including the duty "to keep its premises in a reasonably safe condition, and to avoid and/or eliminate the existence of known or reasonably anticipated hazards" (emphasis added). In this count of the amended complaint, plaintiffs also alleged that the "defective condition on the premises" created an unreasonable risk of harm.

At her deposition, Michelle stated that she did not see the substance on which she slipped until she was on the floor. She testified that, once she was on the floor, she saw "a very light coating" of water on the tile and "in the cracks of the tile," and stated that the water was coming up between the cracks of the tiles. Michelle testified that Pierre did not directly witness her fall, but explained that he returned to her location after she fell. Michelle believed that, after she pointed to it, Pierre could see the water on the tile floor, from the position where he was standing.

Pierre testified that he saw "drops" of water, as well as "a film of water," on the tile floor. Pierre opined that the water was not something that someone spilled or tracked in, but was water that came up from beneath the floor tiles. When asked to explain why he developed this opinion, Pierre responded that the store was built on top of a swamp and that the store was not properly constructed. Pierre then testified that the water on which Michelle slipped came from a pipe located near a cash register. Pierre insisted that he physically saw the pipe, as well as water and mud seeping out of the pipe. Pierre testified that water had been dripping from the pipe for years, which he knew because, approximately one year before Michelle's slip and fall, he witnessed mud and water on the floor in the same spot and noticed that "there was somebody mopping it at that time." Pierre testified that he returned to the store the night before his deposition, in an attempt to see if the pipe was still by the cash register, but the pipe was gone.

Defendant's store manager, Kevin Olive, completed an incident report after Michelle's fall. Olive reported that at 8:10 p.m., Michelle "slipped while walking down the concourse" between the checkout lanes and the guest-service desk and "overextended her left leg" while wearing "[c]heap black flip flops." Olive indicated that there was "a drop of clear liquid on the floor" that was "[m]aybe a quarter of an inch wide" and that no one's foot had slipped through it. Olive directed the store detective to review the surveillance video to see when the last store employee walked through that area, and discovered that an employee named Diana walked through the area at 8:02 p.m.

Diana Dunlop, the employee identified by Olive as the last store employee to walk through the area before Michelle's fall, completed a witness statement indicating "that between lane 13 and the service desk there was not anything on the floor, when I walked by." Shana Carey, another store employee who rendered assistance to Michelle when she fell, completed a witness statement describing "a small amount of water on the floor, like a few drops it looked like." At her deposition, Carey stated that "there was a little bit of water on the floor, like maybe a droplet or two," and she remembered that the droplets were "[m]aybe like the size of a nickel."

-2-

Immediately after the accident, Michelle was transported to the hospital by ambulance. She spent the night in the hospital and was released the next day. At the hospital, she underwent x-rays and received pain medication. Michelle testified that she tore her hamstring in three places. She participated in physical therapy through March 2015, when she reported significant improvement. Michelle reported no medical treatment between March 2015 and March 2017. About a month before her deposition, Michelle sought treatment from Dr. Ronald Lederman, who expressed concern for a partial or total rupture of her hamstring. Dr. Lederman ordered an MRI that identified strains of the left gluteus muscle and tendon, but identified no hamstring tear or strain.

Regarding his claims for intentional infliction of emotional distress and loss of consortium, Pierre testified that he had received no medical treatment for any physical injuries and that he had no ongoing medical conditions. Pierre further testified that, although he felt depressed and anxious as a result of Michelle's injuries, he had never sought any psychological treatment or counseling for emotional issues that he had suffered as a result of Michelle's injuries. He testified that he never attended counseling and emphatically confirmed, "I never will."

Defendant filed a motion for summary disposition under MCR 2.116(C)(10). Defendant argued that both of Michelle's claims sounded in premises liability, regardless of how she characterized them. Therefore, defendant sought summary disposition of plaintiff's negligence/gross-negligence claim, arguing that it was a disguised premises-liability claim. Defendant also argued that plaintiffs' premises-liability claim was barred because the water on which Michelle allegedly slipped was an open-and-obvious hazard. Finally, defendant argued that Pierre's claim for negligent infliction of emotional distress should be dismissed because there was no evidence that Michelle suffered a serious injury or that Pierre suffered shock causing him physical harm.

In its brief opposing defendant's motion for summary disposition, plaintiffs raised, for the first time, an argument that one of defendant's employees noticed the water that caused Michelle's fall, attempted but failed to clean it up, and made the hazardous condition worse. Plaintiffs argued that they obtained surveillance video taken around the time of Michelle's fall and that the video showed:

> At 8:06:32 p.m., around four minutes before Michelle's fall, a Meijer employee can be seen walking towards something on the floor. Then, at 8:06:37, that employee can be seen bending down and wiping something up off the floor. At 8:06:40, the employee is carrying something white—most likely a paper towel—that she had just used to wipe something off the floor. . . . The area where the employee appears to be cleaning is two, maybe three feet from where Michelle slips and falls less than four minutes later.

In support of this assertion, plaintiffs attached to their trial-court brief only grainy, low-quality photographs clipped from the surveillance video. Plaintiffs offered no proof that the person seen bending down was defendant's employee, rather than a customer or someone else.

The trial court granted defendant's motion for summary disposition and this appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision with regard to a motion for summary disposition de novo as a question of law. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). MCR 2.116(C)(10) permits summary disposition when, except with regard to the amount of damages, there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.

### B. NEGLIGENCE CLAIM

Plaintiffs first argue that the trial court erroneously ruled that Michelle's negligence/gross-negligence claim was a disguised premises-liability claim. We disagree.

Plaintiffs rely primarily on *Laier v Kitchen*, 266 Mich App 482, 490; 702 NW2d 199 (2005), to argue that their negligence/gross-negligence claim was distinct from their premises-liability claim. In *Laier*, the decedent was killed in an accident on the defendant's horse farm. The defendant borrowed a tractor from the decedent and used the tractor's front-end-loader bucket to compress materials in a dumpster. After the defendant damaged the hydraulic hose on the front-end-loader, the defendant asked the decedent to assist, and they jointly attempted to repair the hydraulic hose. During the attempted repair, the bucket on the front-end loader dropped, pinning the decedent against the tractor and killing him. *Id.* at 484-485. The plaintiff filed a wrongful-death action alleging that the defendant's negligence in operating and repairing the tractor caused the decedent's death. *Id*. at 486. In the complaint, the plaintiff "alleged a single count of negligence without identifying any specific theory of liability." *Id*. at 490. The trial court granted the defendant's motion for summary disposition and dismissed the wrongful-death action on the ground that the defendant, as a landowner, had no duty to protect or warn the decedent, an invitee, of open-and-obvious dangers. *Id*. at 486.

On appeal, this Court noted that the case involved claims of both ordinary negligence and premises liability and stated that the "distinction in theory is important and is one that the bench and bar have increasingly failed to recognize in applying the open and obvious danger doctrine." *Id*. at 487. This Court held that, although the plaintiff in that case "was relying in part on a theory of premises liability," *id*. at 490, the plaintiff also alleged that the defendant owed the decedent a duty "to use due care and caution in the operation and control of the tractor and bucket," *id*. at 493. Therefore, this Court concluded that the "[d]efendant's conduct was thus an alleged basis of liability, independent of premises liability." *Id*. This Court explained that the defendant "owed the decedent a duty of ordinary care not to act negligently with regard to the repairs undertaken and control of the tractor's front-end loader," in addition to a duty based on the decedent's "status as an invitee, i.e., a duty to protect [the decedent] from unreasonable risks of injury known to defendant and to warn [the decedent] about those risks." *Id*. at 497.

In this case, the trial court relied on *Jahnke v Allen*, 308 Mich App 472, 474-475; 865 NW2d 49 (2014) (cleaned up), which explained the difference between ordinary-negligence claims and premises-liability claims:

> In a premises liability action, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land. Terms such as premises possessor and dangerous condition on the land relate to the elements of a premises liability, rather than ordinary negligence, claim. The duty owed in a premises liability case is that the landowner simply owes the licensee a duty to warn of unreasonably dangerous conditions, when the licensee neither knows nor has reason to know of the condition and the risk involved. Whereas, the duty owed in a general negligence claim is that every person who engages in the performance of an undertaking has an obligation to use due care or to act so as not to unreasonably endanger the person or property of another. Additionally, alleging that defendant created the condition does not transform the claim into one for ordinary negligence. An action in premises liability, however, does not preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct.

Applying the rationale of *Jahnke* and *Laier* in this case, we conclude that the trial court properly understood plaintiffs' negligence/gross-negligence claim as a premises-liability claim. Regardless of how a plaintiff tries to characterize his or her claim, a court must look beyond the label placed on the claim and make its determination based on the substance rather than the form. *Brownell v Garber*, 199 Mich App 519, 532-533; 503 NW2d 81 (1993). In their amended complaint, plaintiffs' negligence/gross-negligence allegations employed language common to premises-liability claims. Plaintiffs claimed the status of business invitees and alleged that defendant created "a dangerous and hazardous condition on the premises." Importantly, plaintiffs never alleged in their amended complaint that one of defendant's employees negligently attempted but failed to clean up a spill on the floor. Although a motion to amend the pleadings should ordinarily be granted, *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997), plaintiffs never requested an opportunity to amend further their complaint to add such allegations; plaintiffs simply insist that their amended complaint, as currently pleaded, adequately sets forth a claim of negligence/gross-negligence. Because plaintiffs' amended complaint did not allege a claim based on defendant's conduct, but only alleged a claim based on the condition of defendant's premises, we conclude that Michelle did not allege a claim sounding in negligence, but only alleged a claim sounding in premises liability.

Furthermore, even if plaintiffs were allowed to amend their complaint again, their argument would fail. In response to defendant's motion for summary disposition, plaintiffs offered still photographs purporting to show a person bending down toward the floor, near the location where Michelle slipped and fell. Plaintiffs offered only speculation that the individual seen in the still photographs was one of defendant's employees. Further, plaintiffs offered no evidence regarding why the individual bent down toward the floor; the image could easily be of a customer who dropped an item and who quickly bent down to pick it up. Although circumstantial evidence may be used to support a claim, parties opposing a motion for summary disposition "must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb*

*Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Because plaintiffs failed to come forward with evidentiary proof supporting their claim that one of defendant's employees made a negligent attempt to clean the store floor, the trial court properly granted summary disposition regarding plaintiffs' negligence/gross-negligence claim.

## C. PREMISES-LIABILITY CLAIM

Plaintiffs next argue that the trial court erroneously dismissed Michelle's premises-liability claim on the ground that the liquid on which Michelle slipped and fell was an open-and-obvious hazard. We disagree.

As our Supreme Court stated in *Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012):

> The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land. With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect. [*Id*. at 460 (citations omitted).]

There is no dispute that Michelle was an invitee and therefore defendant as the landowner had "a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id*. at 597 (citations omitted).

Although "landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land," it is also true that "landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land." *Hoffner*, 492 Mich at 459. A landowner has no duty to protect or warn an invitee of open and obvious conditions "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon a casual inspection." *Id*. at 461. This test is objective, with the proper inquiry being "whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478-479; 760 NW2d 287 (2008).

Defendant was entitled to summary disposition. Although the trial-court record contains some testimony about wet and dry mud near one of the cash registers, both plaintiffs testified that Michelle slipped not on the mud, but on water or clear liquid that was on the floor in the center aisle, some distance away from the cash registers. Pierre testified that he saw a "film of water" on the floor "coming through the tiles near the register area" and that he saw water

coming through the floor tiles "throughout that section" of the store where Michelle fell, from the center of the main aisle to the cash registers. In addition, Pierre testified that he saw water and mud seeping out of a pipe near a cash register and that he saw that the water traveled across the floor a distance of at least six feet, from the cash register to the spot where Michelle fell.

This Court has held that when a plaintiff or other eyewitness admits that a hazard is visible after an incident, this testimony reinforces and bolsters the conclusion that the condition was open and obvious under an objective standard. See *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 713-714; 737 NW2d 179 (2007). This case is indistinguishable from *Kennedy*. Although Michelle did not observe the water before she slipped and fell, both she and Pierre readily observed it after she fell. In both this case and in *Kennedy*, the injured party purportedly did not see the danger before slipping and falling. Still, like in *Kennedy*, plaintiffs in this case could identify the danger in question once they looked at the floor. Because the danger was open and obvious according to plaintiffs' own evidence, defendant had no duty to warn or protect Michelle from the danger presented by the water on the floor. Therefore, the trial court properly granted summary disposition of Michelle's premises-liability claim to defendant under MCR 2.116(C)(10).

D. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs next argue that the trial court erroneously granted defendant's motion for summary disposition regarding Pierre's claims for intentional infliction of emotional distress. We disagree.

A plaintiff may recover for negligent infliction of emotional distress, as a bystander, when (1) the injury threatened or inflicted on the third person is a serious one, of a nature to cause severe mental disturbance to the plaintiff; (2) the shock results in actual physical harm; (3) the plaintiff is a member of the third person's immediate family; and (4) the plaintiff is present at the time of the accident or suffers shock "fairly contemporaneous" with the accident. *Wargelin v Sisters of Mercy Health Corp*, 149 Mich App 75, 81; 385 NW2d 732 (1986). Subsequent to the decision in *Wargelin*, this Court expressly declined to extend "the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v Detroit News, Inc*, 200 Mich App 622, 629; 504 NW2d 715 (1993).

Pierre's claim fails for several reasons. First, Michelle did not suffer a "serious" injury such as that contemplated in the caselaw discussing negligent infliction of emotional distress. Michelle testified that she tore her hamstring in three places. An MRI taken in 2017, however, indicated that there was no tear or strain to the hamstring. Furthermore, Michelle testified that she participated in physical therapy through only March 2015. She did not seek or obtain any medical treatment between March 2015 and March 2017, but returned to treatment in March 2017, approximately one month before her deposition. Michelle reported discomfort while sitting still, numbness of her toes, and occasional muscle spasms, cramping, and weakness in her left leg. These injuries simply do not rise to the level of a "serious" injury, of a nature to cause severe mental disturbance to Pierre.

Second, even if Michelle's injury was sufficiently serious, Pierre's claim still fails because he did not suffer actual physical harm, and did not suffer "mental disturbance as a result" of Michelle's injury, see *Duran*, 200 Mich App at 629. Although Pierre testified briefly that he suffered anxiety and depression as a result of Michelle's injury, he emphatically denied that he had any plans to seek any type of treatment for those conditions and emphatically denied that he was under any type of treatment for any medical conditions. The trial court, therefore, correctly dismissed Pierre's claim because he failed to raise a genuine issue of material fact regarding physical harm or mental disturbance.

Because we affirm the trial court's grant of summary disposition regarding Michelle's claims, we need not discuss Pierre's loss-of-consortium claim. Such a claim is derivative and is subject to summary disposition when the underlying claims are dismissed. See *Tyra v Organ Procurement Agency of Michigan*, 498 Mich 68, 76 n 3; 869 NW2d 213 (2015).

Affirmed. Appellee, having prevailed in full, is entitled to tax costs under MCR 7.219.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron