NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0583n.06

No. 21-1406

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| CHOICE L. CAUSEY, | ) | **FILED** |
|  | ) | Dec 14, 2021 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| ARTHUR P. DORE, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) |  |
|  | ) |  |

Before: BATCHELDER, ROGERS, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Choice L. Causey appeals the grant of summary judgment to Defendant-Appellee Arthur P. Dore in this action alleging false-light invasion of privacy and tortious interference with a business relationship, arising from statements Dore made to a reporter after Dore Real Estate, LLC (Dore Real Estate) terminated Causey's lease of an event space. The district court concluded that Dore's statements to the reporter that the lease was terminated for failure to make a rent payment were not false or highly objectionable to a reasonable person, and that Causey's claim of tortious interference with a business relationship was time-barred. We AFFIRM.

**I.**

On March 1, 2016, Causey entered into a lease (the Lease) with Dore Real Estate for an event space called the "Prime Event Center" (Prime) in Bay City, Michigan. The Lease was for a six-month term, with an option to extend the term or purchase the building. The Lease required

Causey to pay Dore Real Estate $5,000 by the first of each month. The first and last months' rent was due when the parties signed the Lease. Section 2.11 of the Lease gave Dore Real Estate the right to "terminate th[e] Lease upon written notice to [Causey] for any reason in [Dore Real Estate's] sole discretion." R. 39-2, PID 271. Under § 15.01, if Causey failed to pay rent, Dore Real Estate could re-enter the premises, but only after Causey's "further failure . . . to cure the [nonpayment] within ten (10) days following [Causey's] receipt of written notice of nonpayment." *Id.* at PID 280. Arthur Dore was not a party to the Lease, nor was he a "member, manager or employee" of Dore Real Estate, but he occasionally served as a "consultant to Dore Real Estate . . . in an unpaid capacity." R. 39-5, PID 341. In that role, Dore "performed certain tasks on behalf of Dore Real Estate." *Id.*

A fight broke out at Causey's first event at Prime on March 5, 2016, and a local business owner reported the incident to the police. Police investigated and discovered on social media that two rival gangs were promoting a future event at Prime. Police relayed this information to Dore, who called Causey on March 11, 2016 and left a voicemail saying:

> As we said in the contract, any time I'm not happy the deal was going to be off. So now the deal is off. The police department, the city manager, everybody is on my ass. They're saying that some gangs from Saginaw are promoting the event starting tomorrow and they're scared shitless that something's going to happen. And so I don't want any part of it. So the deal is off. The deal will not go on. The party cannot go on tomorrow night. Call me back, please.

R. 39, PID 244.

Around March 12, 2016, Dore told Causey that he could continue hosting events at Prime if he received approval from police. On March 16, 2016, Causey met with a Bay City officer, Thomas Pletzke, but did not receive his approval. Causey then attended a meeting with Dore and others, in which Dore reiterated that Causey needed police approval to host events. After the meeting, Causey paid Dore the first and last months' rent under the Lease.

Causey never received approval to host events from Dore or police. After Dore's voicemail, Causey hosted one more event at Prime, which he "inherited" from Dore, and possibly an additional event.[1] He was forced to cancel eight other events.

Causey failed to pay the rent due April 1, 2016. On April 14, 2016, Dore Real Estate mailed Causey a letter notifying him that he was in default and demanding payment. On April 25, 2016, Dore Real Estate sent Causey a notice of termination, and then changed the locks and retook possession of Prime.

A reporter interviewed Dore on August 15, 2016. The next day, the reporter published an article on MLive, a news website. The article read in part:

> Sometime between March and July, Dore notified Causey that his contract to run the Prime was being terminated. According to the lawsuit complaint, Dore told Causey that Bay City's manager and its police department were "on his ass" to terminate his contract because they believed he was having gangs promote upcoming events.
>
> Dore said Monday, Aug. 15, that Bay City police officials approached him with concerns about Causey, but that his contract was terminated because Causey wasn't paying his rent.
>
> "The fact is, he didn't live up to his contract," Dore said. "He didn't pay, that's it. I don't know anything about all of that other stuff."

R. 45-11, PID 762.

Causey brought this diversity action against Dore on February 19, 2019, alleging one count of false-light invasion of privacy. He amended his complaint on November 1, 2019, adding one count of tortious interference with a business relationship. Causey's tortious-interference claim alleges that Dore intentionally interfered with the business relationship between Causey and Dore Real Estate, causing termination of the Lease.

---

[1] In his 2017 deposition, Causey testified that he hosted two more events at Prime after the voicemail, one in the last week of March 2016 and one around April 6, 2016. In his 2019 deposition, Causey testified that he hosted one more event at Prime after the voicemail, but he does not remember what the event was.

Dore filed a motion for summary judgment and a motion for leave to file notice of non-party fault, seeking to name Bay City and Officer Pletzke as parties responsible for Causey's damages, as Causey had alleged in two previous lawsuits.[2] Causey filed a motion to amend the complaint. The district court granted Dore's motion for summary judgment, denied Causey's motion for leave to amend, and determined that Dore's motion for leave to file notice of non-party fault was moot. The district court concluded that Causey had not demonstrated that the statements in the MLive article were false or highly objectionable to a reasonable person—two elements of false-light invasion of privacy—and that Causey's tortious-interference claim was barred by the three-year statute of limitations and did not relate back to the original complaint. Causey filed a motion for reconsideration, which the district court denied. Causey then appealed the grant of Dore's motion for summary judgment and the denial of Causey's motion for reconsideration.

## II.

This court reviews de novo a grant of summary judgment, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. False-Light Invasion of Privacy

The parties agree that Michigan law applies. "In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast[ed] to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by

---

[2] In July 2016, Causey brought a § 1983 civil-rights suit against the City of Bay City, its city manager, and the city's chief and assistant chief of police. The suit was dismissed without prejudice. In February 2018, Causey sued Officer Pletzke, alleging that he pressured Dore Real Estate to terminate its contract with Causey in retaliation for a 2002 lawsuit. The parties settled Causey's 2018 case.

attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 448 (Mich. Ct. App. 2018) (quoting *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720–21 (Mich. Ct. App. 1993)). The publicized information must be "highly offensive to a reasonable person." *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 835 (Mich. Ct. App. 1986). The defendant must also "have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Puetz*, 919 N.W.2d at 448–49 (quoting *Detroit Free Press, Inc. v. Oakland Cnty. Sheriff*, 418 N.W.2d 124, 128 (Mich. Ct. App. 1987)).

Causey argues that Dore made three false statements to the reporter: (1) Causey did not pay his rent, (2) the Lease was terminated because Causey did not pay his rent, and (3) Causey "didn't live up to his contract." Causey asserts that the Lease was terminated on March 11, 2016, when Dore left a voicemail on Causey's phone informing him that "the deal [was] off"; therefore, Causey argues, no rent payment was due April 1, 2016, and Dore's statement that he did not "live up to his contract" was false. Appellant's Br. at 17. We disagree.

Dore's voicemail did not terminate the Lease. Dore Real Estate could terminate the Lease for any reason after providing written notice, and if Causey failed to pay rent, Dore Real Estate could re-enter the premises after providing written notice and allowing time to cure. The Lease did not provide for termination by voicemail or any method other than written notice. When Causey failed to make his April rent payment, Dore Real Estate sent Causey written notice and allowed time to cure before terminating the Lease. Dore Real Estate terminated the Lease after the time to cure expired. Further, as the district court observed, Causey "continued to operate [Prime] after the voicemail and during the month of April, contradicting his termination claim." R. 58, PID 922. After the voicemail, Causey hosted at least one event at Prime; he testified that

he "open[ed] the doors, open[ed] the venue, . . . staffed it[,] [and] [o]perated it." R. 39-3, PID 303. And after the voicemail, Causey paid Dore Real Estate the first and last months' rent that was due when the parties signed the Lease. So, it cannot be argued that Causey waived Dore Real Estate's failure to provide written notice of termination. Thus, the March 11, 2016 voicemail does not create a genuine dispute of material fact regarding when the Lease was terminated or regarding the truthfulness of Dore's statements to the reporter.

Causey testified that he did not receive Dore Real Estate's notices of default and termination in April 2016.[3] But a handwritten note on the April 14, 2016 notice of default indicates that the notice was mailed, and Causey confirmed that the delivery address on the notices was in fact his home address. Considering this evidence, Causey's testimony does not create a genuine dispute of material fact regarding whether the Lease was terminated in April 2016 for nonpayment of rent. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Additionally, Causey has not demonstrated that Dore's statements to the reporter were "unreasonable and highly objectionable." *See Puetz*, 919 N.W.2d at 448. Causey argues that a publicized statement that a person did not pay rent is highly objectionable because "[a] person could intentionally not pay rent, which would imply that the person . . . is not a man of his word," and "[t]he same person could also unintentionally not pay rent, which would imply that he could not afford to make the payment or that his business was not successful." Appellant's Br. at 19. But Michigan case-law requires more. In *Reed v. Ponton*, 166 N.W.2d 629 (Mich. Ct. App. 1968),

---

[3] At one point in his 2017 deposition, Causey testified that he did not recall receiving the April 14, 2016 notice of default, but he did not dispute receiving it. At another point in his deposition, Causey testified that he did not receive the notice of default.

a department-store manager "charged out of his office and carried on an abusive tirade," accusing the plaintiff-customer of being "like a thief" for not paying for her layaway item. *Id.* at 629 n.1. The court concluded that the manager's statement did not amount to a false-light invasion of privacy because the statement was not sufficiently publicized and did not "lift the curtain of privacy on a subject matter that a reasonable man of ordinary sensibilities would find offensive and objectionable." *See id.* at 630. An accusation that a tenant did not pay rent is no more objectionable than an accusation that a customer is "like a thief" for not paying for her layaway item. We recognize that Causey may have understandably been upset that his nonpayment of rent was identified as the reason the Lease was terminated when there appeared to have been additional issues at play, but Causey has not established that Dore's statements to the reporter were "highly offensive to a reasonable person." *See Early Detection Ctr.*, 403 N.W.2d at 835.

## B. Tortious Interference With a Business Relationship

The statute of limitations for claims of tortious interference with a business relationship in Michigan is three years. *See Blazer Foods, Inc. v. Rest. Props., Inc.*, 673 N.W.2d 805, 813 (Mich. Ct. App. 2003). Causey amended his complaint to add the tortious-interference claim in November 2019, over three years after the Lease was terminated in April 2016. The district court concluded that Causey's tortious-interference claim is barred by the statute of limitations and does not relate back to the original complaint. We review de novo determinations that claims do not relate back to an earlier complaint. *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 374 (6th Cir. 2015).

Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides in relevant part: "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In applying that

test, courts are guided by "whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Durand*, 806 F.3d at 375 (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007)). "This standard is usually met 'if there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong.'" *Id.* (quoting *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 250 (6th Cir. 2000)). Courts also look to other factors to determine whether a claim relates back to the original pleading. "[U]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision." *Moross Ltd. P'ship v. Fleckenstein Cap., Inc.*, 466 F.3d 508, 518 (6th Cir. 2006) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). "Of these factors, [n]otice and substantial prejudice to the opposing party are critical . . . in determining whether an amendment should be granted." *Miller*, 231 F.3d at 250 (internal quotation marks omitted).

Causey argues that his two claims arise from the same facts. Appellant's Br. at 22. He reasons that "[o]ne cannot conclude that [Dore] placed [Causey] in a false light by making false statements to the media . . . unless one first analyzes how and why the lease agreement terminated." *Id.* He adds, "A review of the two complaints demonstrates that the only new factual allegation raised in the amended complaint was the fact that [Dore] was not a party to the 2016 lease agreement."[4] *Id.*

We agree with the district court that Causey's tortious-interference claim does not relate back to the original complaint. True, the claims both involve the termination of the Lease. But

---

[4] The parties did not brief some of the factors that inform a court's relation-back analysis, including "undue delay" and "undue prejudice to the opposing party." *See Moross*, 466 F.3d at 518.

the alleged conduct underlying each claim is different: Causey's false-light claim arises from Dore's statements to the reporter about Causey's conduct and the reasons for termination of the Lease; Causey's tortious-interference claim arises from Dore's intervention in Causey's business relationship with Dore Real Estate, causing it to terminate the Lease. The differences between Causey's claims suggest that they do not share an "identity . . . with regard to the general wrong suffered and with regard to the general conduct causing such wrong." *See Durand*, 806 F.3d at 375; *see also Moross*, 466 F.3d at 518 (concluding that claims of misrepresentation and nondisclosure of self-dealing did not relate back because they alleged "completely different conduct" from the conduct underlying the cherry-picking claim in the original complaint); *cf. Hall v. Spencer County*, 583 F.3d 930, 934 (6th Cir. 2009) (concluding that the amended complaint related back to the original complaint where both complaints alleged claims based on the same conduct). Accordingly, the original complaint did not place Dore on notice that he might need to defend against Causey's tortious-interference allegations, and Causey's tortious-interference claim does not relate back to his initial complaint.[5] *See Durand*, 806 F.3d at 375.

Next, Causey asserts that Dore "fraudulently concealed" his relationship with Dore Real Estate, such that Causey did not "know[] of the existence of the [tortious-interference] claim" within the limitations period. Appellant's Br. at 23. In a 2016 lawsuit brought by Causey, Dore was asked if he "entered into some sort of . . . a contract . . . between [Causey] and [Dore Real Estate]," to which Dore responded, "I believe that's right." R. 45-5, PID 688. In 2019, Dore testified that he "did not enter into a lease" and that he had "[n]o arrangement" with Causey. R. 45-6, PID 703. Causey argues that Dore's initial failure to reveal that he was not a party to the Lease

---

[5] We do not address whether the claims might be sufficiently related in a different case where a third-party landlord terminates a lease because of the challenged publicized statements.

prevented Causey from bringing a tortious-interference claim before the statute of limitations had run. *See* Appellant's Br. at 22–23.

To establish equitable tolling of the statute of limitations because of a defendant's fraudulent concealment, a plaintiff must demonstrate that (1) the defendant "concealed the conduct that constitutes the cause of action"; (2) the defendant's concealment "prevented [the] plaintiff[] from discovering the cause of action within the limitations period"; and (3) "until discovery, [the] plaintiff[] exercised due diligence in trying to find out about the cause of action." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). Here, the Lease listed Dore Real Estate, not Dore, as the lessor, and Dore did not sign the Lease on Dore Real Estate's behalf. Causey has not demonstrated that Dore's testimony in the 2016 case, in which Dore equivocally expressed his belief that he entered into the Lease on behalf of Dore Real Estate, prevented Causey from discovering the factual bases of a tortious-interference claim against Dore in this case. The Lease itself provided the necessary information. Nor has Causey established that he exercised due diligence in "trying to find out" about a potential claim of tortious interference with a business relationship. *See id.* Thus, Causey's fraudulent-concealment theory is unavailing.

Because Causey has failed to demonstrate two elements of false-light invasion of privacy and his tortious-interference claim is barred by the statute of limitations, the district court did not err in granting Dore's motion for summary judgment and denying Causey's motion for reconsideration.

**III.**

For the foregoing reasons, we AFFIRM the district court's judgment.